2007 WY 49

**Ronald L. SNELLING, Appellant (Plaintiff),**

v.

**Andy ROMAN, d/b/a Alpine Excavation, Appellee (Defendant).**

No. 06–91.

Supreme Court of Wyoming.

March 20, 2007.

Representing Appellant: Ronald L. Snelling, pro se.

Representing Appellee: Virgil G. Kinnaird and Sheryl Smith Bunting of Kinnaird Law Office, P.C., Sheridan, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, BURKE, JJ.

GOLDEN, Justice.

[¶ 1] Ronald Snelling bought land near Story, Wyoming, on which to build a home. He hired Andy Roman to do dirt work at the home site. Snelling was living in Minnesota when most of Roman's work was completed but periodically visited the home site in Wyoming to inspect the progress of the construction. Snelling paid a portion of Roman's bill but, in the end, Snelling decided he was dissatisfied with the excavation work done by Roman and refused to pay the outstanding balance on Roman's bill. Snelling eventually initiated the current action against Roman, generally alleging breach of contract and fraud. Roman counterclaimed, seeking payment for his completed services and material costs. After a bench trial, the trial judge dismissed all of Snelling's claims and granted judgment for Roman on his counterclaims. We affirm.

## ISSUES

[¶ 2] Snelling designates multiple issues for this Court's consideration:

1. Was it reversible error to dismiss counts I, II and III of plaintiff's complaint all of which were based on defendant's representations that the road to be constructed for plaintiff was to be approximately one-half mile in length when the actual road constructed was 1150 feet long?

2. Was it reversible error to find as fact that the plaintiff had the same information as did defendant as to the length of the road to be built for $35,000.00 where the contract between the parties specified a road to be approximately one-half mile long and where the evidence showed that

plaintiff [w]as not in Wyoming when the road was staked and buil[t] by defendant?

3. Was it reversible error for the trial court to award defendant the full amount of his invoice for certain excavation work when the invoice included work done after the plaintiff instructed the defendant to do no further work?

4. Was it reversible error for the Trial Court to award defendant the full amount of his excavation invoice based on the Trial Court's determination that such amount was reasonable when the Trial Court excluded plaintiff's offered expert testimony as to reasonableness?

5. Was it reversible error for the Trial Court to permit a non-disclosed expert witness to testify over objection that 15 to 24 rocks provided by defendant to plaintiff were worth $12,000.00 when the witness had stated he would have to look more closely at the rocks to value them?

6. Was it reversible error for the Trial Court to find that the amount of plaintiff's black dirt taken by defendant was "insignificant" when there was no testimony or evidence to the amount of black dirt defendant was entitled to in trade for 15 to 24 rocks?

## FACTS[1]

[¶ 3] Snelling is a semi-retired attorney originally from Minnesota. He bought property near Story, Wyoming, in 1999 with the purpose of building a home thereon. Snelling and Roman met for the first time on July 13, 2001, at the property site, before any construction had begun. Within a few weeks Snelling and Roman had agreed that Roman would do the dirt work associated with the construction project. A letter agreement written by Snelling, dated August 13, 2001, stated Roman could begin trenching utilities and building a road on Snelling's property from the public road to the area of the proposed home site. Snelling agreed to pay $35,000 for this work. All future dirt work was to be done at Roman's normal work rates. Roman accepted this agreement and began work.

1. In accordance with our standard of review, we accept the facts most favorable to Roman.

[¶ 4]   Roman completed the trenching and the road.   The ultimate length of the road was slightly less than a quarter-mile.   In mid-May 2002, Snelling paid Roman the agreed upon $35,000.   Roman then commenced the second phase of the dirt work, including excavating the house site, installing a septic system, and constructing a circular driveway in front of the house.   Roman billed Snelling as work was completed. Snelling paid $5,000 as an advance on the work, but then, in May 2003, Snelling refused to pay the remainder of Roman's bill.

[¶ 5]   Roman also supplied Snelling with approximately 20 to 25 feature rocks for landscaping purposes.   The initial agreement was to exchange the feature rocks for black dirt on Snelling's property.   Roman took about two dump truck loads of black dirt from Snelling's property before the billing dispute arose and Snelling told Roman he could not have any more black dirt.   Roman then billed Snelling $12,000 for the feature rocks.   Snelling did not pay this invoice.

[¶ 6]   Eventually, Snelling filed the instant action.   Though separated into several different claims, the gist of Snelling's allegations was that Roman misrepresented the length of the road and therefore he overpaid for the road, and that other work performed by Roman was substandard and he incurred expenses hiring another contractor to fix the resulting problems.   Roman counterclaimed for payment on his outstanding invoices, including work performed, materials and the feature rocks.   After a bench trial, the district court ruled against Snelling on all counts and awarded Roman $30,137.90 on his counterclaims.   Snelling appeals.

### DISCUSSION

#### Standard of Review

[¶ 7]   After a bench trial, we review the trial court's factual findings under a clearly erroneous standard and its legal conclusions de novo.   *Hansuld v. Lariat Diesel Corp.*, 2003 WY 165, ¶ 13, 81 P.3d 215, 218 (Wyo.2003) (citing *Rennard v. Vollmar*, 977 P.2d 1277, 1279 (Wyo.1999)).   We do not substitute ourselves for the trial court as a finder of facts;   instead, we defer to the trial court's findings unless they are unsupported by the record or erroneous as a matter of law.   *Deroche v. R.L. Manning Co.*, 737 P.2d 332, 336 (Wyo.1987).   Although the factual findings of a trial court are not entitled to the limited review afforded a jury verdict, the findings are presumptively correct.   *Piroschak v. Whelan*, 2005 WY 26, ¶ 7, 106 P.3d 887, 890 (Wyo.2005).

[¶ 8]   This Court may examine all of the properly admissible evidence in the record, but we do not reweigh the evidence. *Forshee, et ux. v. Delaney, et ux.*, 2005 WY 103, ¶ 6, 118 P.3d 445, 448 (Wyo.2005).   Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses.   We accept the prevailing party's evidence as true and give to that evidence every favorable inference which may fairly and reasonably be drawn from it.   *Harber v. Jensen*, 2004 WY 104, ¶ 7, 97 P.3d 57, 60 (Wyo.2004) (quoting *Life Care Centers of America, Inc. v. Dexter*, 2003 WY 38, ¶ 7, 65 P.3d 385, 389 (Wyo.2003)).   Findings may not be set aside because we would have reached a different result.   *Harber*, ¶ 7, 97 P.3d at 60 (citing *Double Eagle Petroleum & Mining Corp. v. Questar Exploration & Production Co.*, 2003 WY 139, ¶ 6, 78 P.3d 679, 681 (Wyo.2003)).   A finding will only be set aside if, although there is evidence to support it, this Court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.   *Mullinnix LLC v. HKB Royalty Trust*, 2006 WY 14, ¶ 12, 126 P.3d 909, 916 (Wyo.2006).

[¶ 9]   In reviewing a trial court's construction of a contract, the initial question of whether the contract is ambiguous is a question of law for this Court.   *Piroschak*, ¶ 9, 106 P.3d at 891.   When the terms of the agreement are unambiguous, the construction of the contract is also a question of law. *Seherr–Thoss v. Seherr–Thoss*, 2006 WY 111, ¶ 11, 141 P.3d 705, 712 (Wyo.2006).   We review questions of law de novo.   *Y–O Investments, Inc. v. Emken*, 2006 WY 112, ¶ 8, 142 P.3d 1127, 1130 (Wyo.2006).

#### Length of the Road

[¶ 10]   Snelling alleges that he only agreed to pay Roman $35,000 for the initial

road construction and trenching because Roman represented that the road to be constructed was to be approximately one-half mile in length. Snelling complains he was overcharged since the finished length of the road was not a half-mile but rather slightly less than a quarter-mile. Roman, on the other hand, claims he never estimated the length of the road because the road was bid as a flat fee, with the finished length being immaterial.

[¶ 11] The parties concur that their agreement on terms for the construction of the road is embodied in the August 13, 2001, letter from Snelling to Roman. Both parties characterize this letter as a contract. Our primary objective in construing contracts is to discern the intent of the parties:

> An ambiguous contract contains language that conveys a double meaning. *McNeiley v. Ayres Jewelry Co.*, 855 P.2d 1242, 1244 (Wyo.1993). Disagreement between parties regarding the meaning of a contract does not establish an ambiguity. *Moncrief v. Louisiana Land and Exploration Co.*, 861 P.2d 516, 524 (Wyo.1993). Whether a contract contains an ambiguity is a question of law for the reviewing court. *Prudential Preferred Properties [v. J and J Ventures, Inc.]*, 859 P.2d [1267,] at 1271 [ (Wyo.1993) ].
>
> Contract interpretation is the process of ascertaining the meaning of the words used by the parties to express their intent. *Doctors' Co. v. Insurance Corp. of America*, 864 P.2d 1018, 1023 (Wyo.1993). We generally look to the "four corners" of an instrument to determine the intent of the parties. *Id.* at 1024.

*Idaho Migrant Council, Inc. v. Warila*, 890 P.2d 39, 40–41 (Wyo.1995). We begin by looking at the words of the contract and the surrounding circumstances at the time of the making of the contract. *Wells Fargo Bank Wyoming, N.A. v. Hodder*, 2006 WY 128, ¶ 16, 144 P.3d 401, 408 (Wyo.2006); *Hickman v. Groves*, 2003 WY 76, ¶ 11, 71 P.3d 256, 259 (Wyo.2003).

[¶ 12] In the August 2001 letter, Snelling stated he wanted to clear up any potential misunderstandings before work began. The pertinent part of the letter states:

> Here is what I understand.
>
> 1. For a total of $35,000.00 you will do the following:
>
> (a) Complete a road to the home site on the second plateau of the property. You have described the road to me as having several switchbacks and being somewhere in the neighborhood of one half mile long. You will use culverts, ditching and geomat as necessary to properly construct the road. The road will be guaranteed for five years from the date of completion.
>
> (b) Trench in the electrical to the home site. . . .
>
> (c) You will trench in the phone line and will pay for the wire to be placed in the trench. . . .
>
> (d) You will trench in below the frost line a water line from the well on the property of the house site and provide the water line.
>
> 2. In addition to paying $35,000.00 for the described work, I agree to use Alpine Excavation for the dirt work which will be involved in building a house. This is based on the assumption that you will be charging your normal rates for that work.

Snelling also wrote:

> Of course, it will be your responsibility to make certain the road gets built entirely within my property lines. I have given you a copy of the plat and I am sending you a copy of the legal description of the property with this letter.

Snelling finished the letter by stating: "let me know whether I have correctly stated our understanding in this letter. If I have not, obviously do not begin the work until we have squared things away."

[¶ 13] The parties agree that there was no further communication regarding any potential misunderstanding and both parties proceeded under the terms of this letter contract. Snelling alleges that the length of the road—"somewhere in the neighborhood of one half mile"—was a material term of the contract. Accordingly, Snelling based the first three counts of his complaint on the premise that Roman misrepresented the

length of the road. After the bench trial, the district court expressly found that Roman "did not misrepresent the length of the road, as the contract was not based upon length and [Snelling] had the same information as [Roman]." The district court accordingly dismissed all three counts.

[¶ 14] Looking at the language of the contract and the surrounding circumstances, we agree with the district court's ruling. The contract contains no indication that the cost of the road was based upon its length. The contract does not calculate the cost of the road, or the trenching, in terms of linear feet or like measurement. The contract unambiguously proposes a flat fee in exchange for Roman: completing a road to the home site on the second plateau of the property; trenching the electrical; trenching the phone line; and trenching the water line.

[¶ 15] Snelling suggests the length of the road was material to his agreement to offer a flat fee of $35,000. He alleges he would have offered less if he had known the road would not be a half-mile in length but rather slightly less than a quarter-mile. Several facts belie this allegation. First, we think Snelling's terms "somewhere in the neighborhood of" are too ambiguous to suggest that Snelling was materially focused on the length of the road.

[¶ 16] Second, the district court was correct in determining that Snelling had the same information regarding the potential difficulty in constructing a road to his home site as did Roman. It is undisputed that Snelling had met with Roman at the property roughly a month before he drafted the August letter agreement. Snelling was intimately familiar with the geography and terrain of his property. Snelling knew where the public road was in relation to his proposed home site and the grade of the land in between the two locations. Snelling was in as good a position as Roman in estimating the potential length of a road to his home site and the difficulty involved in constructing such a road on a suitable grade.

[¶ 17] Lastly, Snelling himself indicates that he knew the road was not finally staked at the time he wrote the contract since he states in the letter that it will be Roman's responsibility to ensure that the road is built entirely within Snelling's property lines. To that end, Snelling was sending Roman a copy of the legal description of the property. Even had a road been staked, it would potentially have to be restaked given this new information. Thus, any information allegedly given by Roman to Snelling prior to the writing of this contract could only have been a rough estimate, inadequate to provide a material term. For these reasons, we find Snelling's first two issues on appeal to be without merit.

### Invoice for work completed after Snelling instructed Roman to do no further work

[¶ 18] Roman came home from working at Snelling's property one day to find a message from Snelling on his answering machine. In the message, Snelling instructed Roman to do no further work. Roman complied with the instruction. Roman did, however, submit a bill for gravel he had used in that one day's work. It is this bill that Snelling alleges he should not be obligated to pay.

[¶ 19] Snelling's objection is disingenuous. Snelling does not dispute that Roman did not get his message until Roman had completed work for the day. Therefore Roman's bill pertained solely to work completed before Roman received the instruction to cease work. Under the circumstances, we find no error in the district court's determination that Roman was entitled to the challenged amount, especially since Roman did not bill for his labor but only for materials he supplied and that were accepted by Snelling.

### Evidentiary Issues

[¶ 20] In issues four and five, Snelling complains about the trial court's rulings on select evidentiary issues, namely the inclusion and exclusion of certain expert testimony. We review a trial court's evidentiary rulings under an abuse of discretion standard. A trial court abuses its discretion if it acts outside the bounds of reason under the circumstances or commits an error of law. *Parrish v. Groathouse Const., Inc.*, 2006 WY 33, ¶ 14, 130 P.3d 502, 506–07 (Wyo.2006).

All relevant evidence is admissible. W.R.E. 402. Relevant evidence, however, may be excluded if it constitutes a "needless presentation of cumulative evidence." W.R.E. 403. Furthermore, rulings admitting or excluding evidence are subject to harmless error analysis. W.R.E. 103; *Armstrong v. Hrabal*, 2004 WY 39, ¶ 11, 87 P.3d 1226, 1230 (Wyo.2004).

[¶ 21] Snelling first complains that his proffered expert witness testimony regarding the reasonableness of Roman's excavation invoice was excluded improperly. Snelling's expert was allowed to testify to the reasonableness of Roman's invoice on direct examination. Snelling's expert testified to the general cost of running certain equipment that would be involved in particular dirt work and the reasonableness of Roman's rates. Snelling's objection is that the trial court refused to allow Snelling to recall his expert on rebuttal. Snelling's offer of proof was that his expert would testify more specifically as to the running costs of particular pieces of equipment. The trial court ruled that such testimony would be cumulative. We do not find that the trial court abused its discretion in so ruling. The trial court allowed Snelling to admit evidence as to the reasonableness of Roman's invoice and simply refused to hear further evidence on the same topic, from the same person.[2]

[¶ 22] Snelling's second complaint is that Roman was allowed to elicit expert testimony from a witness who was designated only as a fact witness in Roman's pretrial disclosure statement. The witness, who had been in the business of selling feature rocks for approximately five years, testified that he had seen some of the feature rocks Roman used at the original quarry site. He had seen the same feature rocks again on Snelling's property, albeit at a distance of about fifty yards. The witness testified as to the general value of the feature rocks he had seen on Snelling's property. He expressly testified that Roman's invoice of $12,000 for those feature rocks was reasonable.

[¶ 23] We need not discuss whether this testimony constituted inadmissible expert testimony because Snelling was not prejudiced by such testimony. There is no indication that the trial court relied on the questioned testimony, nor was it necessary for the trial court to do so. Roman testified extensively as to how he determined the price for the feature rocks and the reasonableness of such price. Roman's testimony is sufficient to support the trial court's finding that the feature rocks were worth $12,000 without reference to the testimony provided by Roman's challenged witness.

### Black dirt

[¶ 24] The initial agreement entered into between Snelling and Roman with regard to the feature rocks was that Roman would trade the feature rocks to Snelling in exchange for black dirt that was being excavated from Snelling's property. Snelling is correct in stating that there was no detailed testimony regarding a specific amount of black dirt that would be involved in the trade. Roman testified that the agreement was that he would be allowed to take as much black dirt as he wanted. Roman took approximately two truckloads of dirt from Snelling's property at about the same time he delivered the feature rocks but then waited to make sure there was enough black dirt for Snelling's purposes before he took any more. Before Roman could claim any more black dirt, the payment dispute developed with Snelling, a part of which was Snelling's refusal to allow Roman to take any more black dirt from the property.

[¶ 25] The trial court found that the two truckloads of black dirt taken by Roman was insignificant and did not factor the amount into the valuation of the feature rocks. This finding is not clearly erroneous. Roman billed Snelling for the feature rocks only after Snelling had stopped Roman from taking any more black dirt. The invoice was for $12,000. Although he only billed $12,000, Roman testified that he believes the value of the feature rocks is $12,000 plus the cost of two days of hauling. It is a reasonable infer-

---

2. We also question the relevance of such testimony in general because the contract between the parties called for Roman's additional work to be charged at Roman's normal rates. There is no reference to what an outside party might consider reasonable.

ence that Roman accounted for whatever value the black dirt he took may have had when preparing the invoice. The value of the black dirt Roman took could therefore have been considered inconsequential to the amount charged in the final invoice.

## CONCLUSION

[¶ 26] We find no reversible error. The record supports that the length of the road was not a material term in the contract for the initial dirt work. Roman adequately proved that he was entitled to judgment as entered. Affirmed.