2008 WY 34

**Wayne GARRISON and Pamela Garrison, Appellants (Plaintiffs),**

v.

**CC BUILDERS, INC., a Wyoming corporation and Clint Cook, Individually, Appellees (Defendants).**

**CC Builders, Inc., a Wyoming corporation, Appellant (Defendant),**

v.

**Wayne Garrison and Pamela Garrison, Appellees (Plaintiffs).**

Nos. S–07–0132, S–07–0133, S–07–0162.

Supreme Court of Wyoming.

March 28, 2008.

Representing Wayne Garrison and Pamela Garrison: Lawrence B. Hartnett of Law Offices of Lawrence B. Hartnett, Jackson, Wyoming.

Representing CC Builders, Inc., a Wyoming corporation and Clint Cook, Individually,: Kenneth S. Cohen of Cohen Law Office, P.C., Jackson, Wyoming; and Heather Noble of Jackson, Wyoming. Argument by Mr. Cohen.

Representing CC Builders, Inc., a Wyoming corporation: Kenneth S. Cohen of Cohen Law Office, P.C., Jackson, Wyoming; and Heather Noble of Jackson, Wyoming. Argument by Mr. Cohen.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

VOIGT, Chief Justice.

[¶ 1] CC Builders, Inc. (CC Builders) built Wayne and Pamela Garrison (the Garrisons) a house in Teton County, Wyoming, on a "cost plus" basis. This litigation resulted

from the parties' subsequent disagreement as to the reasonable cost of construction. Both parties have appealed from the district court's award of damages and costs to the Garrisons. We affirm in part and reverse in part.

## ISSUES

[¶ 2] The numerous convoluted issues presented by the parties in these three inter-related appeals can be restated as follows:

1. Are the district court's findings of fact as to damages clearly erroneous?

2. Are the district court's conclusions of law as to damages inconsistent with its findings of fact?

3. Did the district court err in concluding that CC Builders had not committed fraud?

4. Did the district court abuse its discretion in its award of costs to the Garrisons?

## FACTS

[¶ 3] The Garrisons live in Teton County, Wyoming. CC Builders is a Wyoming corporation engaged in the business of building custom residences in Teton County. In 1994, the Garrisons hired CC Builders, on a "cost plus 10%" basis, to build them a home in the Bear Island Subdivision. The 10% was designated for overhead and profit. During this project, which lasted two years, the Garrisons became friends with Clint and Lisa Cook, the owners of CC Builders.

[¶ 4] As had always been their intent, the Garrisons put the Bear Island home up for sale and began construction planning for a permanent home on a neighboring lot, known as the Hansen property. CC Builders was hired to construct a small guest house and garage on that lot. At some point, however, the Garrisons changed their minds and decided to have a house built for them at Teton Village. They sold the Hansen property and purchased a condominium unit at Teton Village, which they hired CC Builders to remodel.

[¶ 5] In 1999, the Garrisons bought a residential lot at Teton Village and engaged a local architect, Larry Berlin, to design a house. On March 24, 2000, the Garrisons met with Berlin and Clint Cook to consider construction of the house. Although the parties discussed the possibility of a "square-footage" contract, no agreement was reached as to what the cost per square foot would be. Instead, the parties entered into an oral "cost plus 12%" construction contract.

[¶ 6] Excavation for the house's foundation began in late May of 2000. Unstable soils were removed and large areas were backfilled. Gravel was imported to replace other soils under the foundation, and the building site was raised three feet above the original plan. The house was "roughed-in" by March 2001. Wayne Garrison and Clint Cook then met to discuss costs, which subject had not been broached since the project began, even though the Garrisons had, to that date, already paid $1,278,000.00 to CC Builders in response to monthly billings. At that meeting, Cook presented a written estimate to complete the project, excluding landscape and "hardscape"[1] costs, totaling $3,335,157.00. Garrison authorized Cook to proceed.

[¶ 7] CC Builders did continue with construction of the house. Construction did not strictly follow the architect's plans, however, as numerous changes and additions were made. Those changes and additions were so numerous that, after litigation began and the district court authorized an inspection of the residence, the changes and additions were compiled into what became known as the "List of 520."

[¶ 8] The Garrisons continued to pay CC Builders' monthly invoices through August 10, 2001—the total at that point being $3,463,174.74. The September 6, 2001 monthly invoice was for an additional $532,775.72. The Garrisons paid all but $57,083.21 of that bill, the withheld sum representing profit and overhead. They also withheld an additional $153,696.44, represent-

---

1. "Hardscape" costs included such things as garden walls, a heated driveway, heated patios, and a bridge.

ing profit and overhead from the monthly billings for October through December 2001.

[¶ 9] The Garrisons sued CC Builders on February 11, 2004, alleging counts of contract breach, fraud, and negligent misrepresentation.[2] Primarily, the Garrisons alleged that CC Builders had agreed to build the house within a year and at a cost of $350 per square foot, which amount was to include 6% for overhead and 6% for profit. The Garrisons further alleged that CC Builders had failed to obtain competitive bids from subcontractors, had failed to build the house in a timely manner, had breached the covenant of good faith and fair dealing, had grossly overcharged for labor costs and use of equipment, had ordered and billed for materials not used on the project, had failed adequately to superintend the project, and had wrongfully charged overhead costs as direct costs. These same allegations were then repeated as having been done knowingly and willfully, or negligently, to support fraud and negligent misrepresentation claims.

[¶ 10] CC Builders answered and counterclaimed, seeking $215,696.44 for breach of contract, that sum representing CC Builders' calculation of the total amount still due under monthly invoices. In its second cause of action, CC Builders sought the same amount under a *quantum meruit* theory. Finally, CC Builders sought damages "in excess of $1,000,000.00" for defamation, alleging that the Garrisons had published false and defamatory statements, orally and in writing, concerning CC Builders' conduct during the construction project.

[¶ 11] After a thirteen-day bench trial, the district court concluded that CC Builders had been overpaid by the Garrisons in the amount of $131,962.77. The district court based that figure on expert testimony as to reasonable costs and industry practices in the area, as well as the parties' course of conduct. The district court's mathematical computation was as follows:

| | |
|---|---|
| Estimate | $3,335,157.00 |
| Permits | 23,713.00 |
| Utilities | 9,006.00 |
| Additional Masonry | 171,163.00 |
| Landscaping | 244,409.00 |
| | $3,723,458.00 [3] |

[¶ 12] After concluding that this figure— $3,723,458.00—was the reasonable cost of the project, the district court noted that the Garrisons had been billed for $3,995,817.77—an overpayment of $272,359.77. The district court also found certain "bonus and incentive" charges in the amount of $123,592.00, to have been unreasonable, raising the overcharge to $395,951.77. From that total, the district court then subtracted $153,000.00 that the Garrisons had withheld, and $110,989.00 for change costs attributable to the Garrisons, leaving the amount due to the Garrisons of $131,962.77. Judgment was entered against CC Builders in that amount.

[¶ 13] After trial, the Garrisons filed a Motion to Amend Judgment, citing W.R.C.P. 59(a)(5) and (6), which rule provides as follows:

> (A) *Grounds.*—A new trial may be granted to all or any of the parties, and on all or part of the issues. On a motion for a new trial in an action tried without a jury, the court may open the judgment, if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment. Subject to the provisions of Rule 61, a new trial may be granted for any of the following causes:
>
> . . . .
>
> (5) Error in the assessment of the amount of recovery, whether too large or too small;
>
> (6) That the verdict, report or decision is not sustained by sufficient evidence or is contrary to law;
>
> . . . .

[¶ 14] Substantively, the Garrisons contended in their motion that the district court should have computed the judgment as fol-

---

**2.** Clint and Lisa Cook were also sued individually. Eventually, the judgment was only against the corporation. No issue has been raised in this appeal as to the question of personal liability.

**3.** This calculation is in error, as will be discussed hereinafter. The correct sum is $3,783,448.00.

lows, based upon the evidence presented at trial:

| | |
|---|---|
| Actual costs through September 2001 less overhead and profit from 9/6/01 invoice | $ 3,938,734.65 |
| October 3, 2001 invoice less overhead and profit from 10/3/01 invoice | 248,288.42 |
| November 7, 2001 invoice less overhead and profit and labor from 11/7/01 invoice | 30,030.91 |
| December 11, 2001 invoice less overhead and profit and labor from 12/11/01 invoice | 12,389.24 |
| January 10, 2002 invoice less overhead and profit and labor from 12/11/01 invoice | 3,327.27 |
| SUBTOTAL | $ 4,202,739.58 |
| Less reasonable cost found by court | 3,723,458.00 |
| SUBTOTAL | $ 479,281.58 |
| Plus unreasonable bonuses and incentives | 123,592.00 |
| SUBTOTAL | $ 602,873.58 |
| Plus change amount known before estimate | 8,602.00 |
| SUBTOTAL | $ 611,475.58 |
| Minus change amounts caused by Garrisons | $ 110,989.00 |
| TOTAL | $ 500,486.58 |

[¶ 15] CC Builders also filed a post-trial motion, entitled "Defendant's Motion to Amend Findings and Judgment." The motion was filed pursuant to W.R.C.P. 52(b), which provides as follows:

(b) *Amendment or additional findings.*— On a party's motion filed no later than 10 days after entry of judgment; the court may amend special findings—or make additional findings—and may amend the judgment accordingly. The motion may accompany a motion for a new trial under Rule 59. When special findings of fact are made in actions tried without a jury, the sufficiency of the evidence supporting the findings may be later questioned whether or not in the court the party raising the question objected to the findings, moved to amend them, or moved for partial findings.

[¶ 16] CC Builders argued in its motion that the trial evidence did not support the district court's finding that CC Builders had overcharged the Garrisons $123,592.00 for certain employee bonuses and incentives. Specifically, CC Builders contended that one of the Garrisons' own witnesses, Barbara Fields, who had analyzed all of the invoices, testified that the Garrisons were billed $37,200.00 as bonus and incentive costs, plus 12% for profit and overhead, for a total of only $41,664.00 Consequently, CC Builders sought a reduction in the judgment of $81,928.00.

[¶ 17] In its second contention, CC Builders pointed out that, when the district court added hardscape and landscape costs to the estimated cost of construction, it failed to include all such costs proven by the evidence. Specifically, CC Builders identified amounts it paid Yellow Iron Excavating, Four Corners Concrete, and Taylor Quality Concrete from June through September 2001, totaling $127,295.36, that it asserted should be added to the reasonable cost of construction, thereby reducing the judgment by that amount.

[¶ 18] In a supplemental motion, prepared after the trial transcripts were available, the Garrisons asked the district court to amend its finding that CC Builders did not commit fraud in its billing practices. Further, the Garrisons broadly sought new or amended findings on numerous issues, including landscaping costs, labor billing, and the total reasonable cost of construction. The Garrisons' fundamental contention was that the evidence showed that CC Builders had defrauded the Garrisons by billing for "phantom" workers and by hiding in its invoices amounts paid as Clint Cook's corporate salary.

[¶ 19] The district court heard both motions to amend judgment on December 4, 2006, and issued an order denying them both on December 22, 2006. The district court found that, through their motions, the parties were attempting to relitigate the case. Ultimately, the district court concluded that its findings of fact were supported by the evidence. Both sides have appealed. The Garrisons focus upon the trial testimony, primarily alleging that the district court disregarded uncontradicted and unim-

peached expert testimony as to the reasonable costs of construction. CC Builders, on the other hand, questions the district court's damage calculations, especially in regard to landscape and hardscape costs, and the amount credited for employee bonuses and incentives. In the third appeal, CC Builders contends that the district court abused its discretion in allowing certain costs to the Garrisons, including the cost of deposition transcripts not used at trial, and reporters' appearance fees.

[¶ 20] One additional matter must be taken into account before we begin to discuss the issues raised herein. On November 1, 2007, CC Builders requested leave of this court to file a motion in the district court under W.R.C.P. 60(a) to correct an alleged mathematical error in the judgment amount. In their response, the Garrisons agreed that a mathematical error appeared to have occurred in the damage award. This Court denied CC Builders' request under the guidance of *Doctors' Co. v. Insurance Corp. of America*, 837 P.2d 685, 686 (Wyo.1992), wherein it is stated that, during the pendency of an appeal, the district court may consider *and deny* a W.R.C.P. 60 motion without leave of this Court, such leave being required only if the district court indicates an intent to *grant* the motion. CC Builders then appropriately approached the district court with a W.R.C.P. 60(a) motion, and on November 28, 2007, the district court indicated that it did, indeed, perceive a mathematical error in the damage award that was not the deliberate result of judicial reasoning, and that it would be inclined to correct the judgment when given authority by this Court to do so. Consequently, on December 18, 2007, this Court entered an order granting leave to the district court to correct the mistake. On January 16, 2008, the district court entered an Order Amending Judgment Sum to Correct Clerical Mistake, in which it reduced the judgment amount from $131,962.77 to $72,062.77. The latter amount is the amount of the judgment as far as these consolidated appeals are concerned.

## OBJECTION TO THE GARRISONS' BRIEF

[¶ 21] Before we discuss the substantive matters involved in this case, we must address a procedural issue. The Garrisons filed their brief as appellants in S–07–0132 on September 10, 2007. CC Builders filed an objection to that brief, contending that it failed to comply with the dictates of W.R.A.P. 7.01, particularly in regard to its lack of citations to the record. This Court sustained that objection and ordered the Garrisons to file a brief with appropriate record citations. The Garrisons filed a second brief on December 3, 2007. CC Builders again objected, this time complaining not only that the Garrisons' brief continued to lack appropriate citations, but that the brief had been changed in ways beyond the Court's order. The Garrisons responded in support of their brief, pointing out the numerous citation corrections made in response to the Court's order. We have examined the Garrisons' second brief and, although it continues to contain incomplete citations and multiple-page citations that are not very helpful, we conclude that it is adequate to allow us to utilize the record in analyzing the issues, and that it does not substantially add new issues to the controversy. Therefore, we will deny CC Builders' request that we strike the brief or sanction the Garrisons.

## DISCUSSION

### *Are the district court's findings of fact as to damages clearly erroneous?*

[¶ 22] In *Snelling v. Roman*, 2007 WY 49, ¶¶ 7–8, 154 P.3d 341, 345 (Wyo.2007), we reiterated our standard for reviewing the determinations of a district court after a bench trial:

> After a bench trial, we review the trial court's factual findings under a clearly erroneous standard and its legal conclusions de novo. We do not substitute ourselves for the trial court as a finder of facts; instead, we defer to the trial court's findings unless they are unsupported by the record or erroneous as a matter of law. Although the factual findings of a trial court are not entitled to the limited review afforded a jury verdict, the findings are presumptively correct.

This Court may examine all of the properly admissible evidence in the record, but we do not reweigh the evidence. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses. We accept the prevailing party's evidence as true and give to that evidence every favorable inference which may fairly and reasonably be drawn from it. Findings may not be set aside because we would have reached a different result. A finding will only be set aside if, although there is evidence to support it, this Court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

*Id.* (citations omitted).

█ [¶ 23] The Garrisons' contention that the district court's findings of fact are clearly erroneous begins with the premise that expert testimony is required to prove matters outside the common ken, including customs, standards, and practices of the construction industry. In support of that proposition, the Garrisons cite three cases: *Roybal v. Bell*, 778 P.2d 108 (Wyo.1989); *Logan v. Pacific Intermountain Express Company*, 400 P.2d 488 (Wyo.1965); and *Govin v. Hunter*, 374 P.2d 421 (Wyo.1962). We note that *Roybal* and *Govin* are both medical malpractice cases wherein we held that, in professional negligence actions, proof of the standard of care requires expert testimony. *Roybal*, 778 P.2d at 112; *Govin*, 374 P.2d at 422.[4] *Logan*, another negligence case, does speak to the point of whether certain matters are of "common knowledge," thereby obviating the need for expert testimony. *Logan*, 400 P.2d at 493. CC Builders does not contest the assertion that expert testimony is required to prove reasonable costs under a "cost plus" building contract, and cites no authority to the contrary. Consequently, we will accept the Garrisons' proposition and apply it in this case.[5]

█ [¶ 24] The gravamen of the Garrisons' argument in regard to the district court's findings of fact as to damages is that the district court did not accept the "uncontradicted and unimpeached" opinion of their expert witness, Timothy Ciocarlin, that the reasonable cost to construct the house, excluding landscaping, was $3,000,000.00. To the contrary, the district court found the reasonable cost of construction was $3,783,448.00, which total included landscaping costs. *See supra* ¶ 11, n. 3. CC Builders responds, first, that a trier of fact is not obligated to accept an expert's opinion, where that expert's credibility has been impeached. *See, e.g., Willis v. State*, 2002 WY 79, ¶ 18, 46 P.3d 890, 896 (Wyo.2002) (impeachment by prior inconsistent statements shows witness capable of making errors in testimony); *Rhoades v. K–Mart Corp.*, 863 P.2d 626, 633 (Wyo.1993) (inconsistencies between deposition testimony and trial testimony are "fair game" for impeachment purposes); *Misner v. Newton*, 448 P.2d 595, 599–600 (Wyo.1968) (trial judge may question credibility where conflicting statements have been made). Second, CC Builders contends that Ciocarlin's testimony was contradicted not only by his own earlier deposition testimony, but by the trial testimony of CC Builders' expert witnesses.

[¶ 25] Having reviewed the entire record, and having examined the judgment entered by the district court, we conclude that CC Builders is correct. Ciocarlin's testimony was far from being "uncontradicted and unimpeached." While there are too many instances to recite them all, a few examples may suffice: (1) during cross-examination at trial, numerous deficiencies were uncovered in Ciocarlin's estimation of the reasonable cost of construction, including unexplained variances in the amount of his different estimates and factually incorrect assumptions about building conditions and requirements; (2) there were differences between Ciocar-

---

4. We have said this same thing many, many times. *See, e.g., Garaman, Inc. v. Williams*, 912 P.2d 1121, 1123 (Wyo.1996); *Moore v. Lubnau*, 855 P.2d 1245, 1254 (Wyo.1993) (Golden J., specially concurring); *Kemper Architects, P.C. v. McFall, Konkel & Kimball Consulting Eng'rs*, 843 P.2d 1178, 1186 (Wyo.1992). While instructive, these cases do not speak directly to the question

of the need for expert testimony to establish the reasonable cost of construction under a "cost plus" contract.

5. *See* 13 Am.Jur.2d *Building and Construction Contracts* § 126 (2000).

lin's deposition testimony and his trial testimony; and (3) there was contradicting testimony from CC Builders' expert witnesses, especially in regard to reasonable labor costs. Under these circumstances, we conclude both that it was not unreasonable for the district court to disregard some or all of Ciocarlin's testimony, and that there was other sufficient evidence from which the district court could determine the reasonable cost of construction.

▮ [¶ 26] In its cross-appeal, CC Builders raises the same two issues that it raised in its motion to amend the district court's findings. First, it contends that the district court did not include all landscape and hardscape costs in its determination of the reasonable cost of construction, and second, it contends that the district court's finding as to the amount of unreasonable employee bonus and incentive costs billed to and paid by the Garrisons was not supported by the evidence.

[¶ 27] In rendering its judgment, the district court added certain landscape and hardscape costs to the estimate CC Builders provided to the Garrisons on March 2, 2001. *See supra* ¶ 11. Those additions included $171,163.00 for additional masonry, and $244,409.00 for landscaping. CC Builders appeals that portion of the Judgment on the ground that, while the district court meant to include the cost of landscape and hardscape in the total reasonable cost of construction, it failed to include all such costs. Specifically, CC Builders contends that the district court overlooked the sum of $127,295.36 incurred by CC Builders for landscape and hardscape labor and materials prior to September 1, 2001.

[¶ 28] The district court obtained the additional sums mentioned above from a Garrison exhibit (Plaintiff's Exhibit 60), which was a comparison of the March 2, 2001 estimate and actual expenditures as of September 6, 2001. *See supra* ¶ 27. CC Builders contends that this exhibit did not include other landscape and hardscape costs incurred prior to September 1, 2001, as shown on their exhibits 5N–5Q, which were CC Builders' invoices to the Garrisons dated June 5, 2001, July 9, 2001, August 10, 2001, and September 6, 2001. Those exhibits show the following expenses, which CC Builders claims are landscape or hardscape costs never included in the district court's calculation of the reasonable cost of construction, and therefore never credited to them in the damage equation:

| | |
|---|---|
| Yellow Iron Excavating | $ 37,825.12 |
| | 13,956.99 |
| | 7,565.38 |
| | 7,437.80 |
| Four Corners Concrete | 18,250.00 |
| Taylor Quality Concrete | 9,196.00 |
| | 35,850.00 |
| TOTAL | $130,081.29 |

[¶ 29] It is unclear from the record or from the briefs why this amount is more than the $127,295.36 that CC Builders believes should be added to the total reasonable cost of construction. CC Builders refers in its brief to an affidavit of Clint Cook purportedly attached to its motion to amend the judgment, but that affidavit has not been included in the record on appeal. The transcript of the post-trial motion hearing also suggests that the $127,295.36 figure is explained in that affidavit, but the affidavit likewise is not attached to that transcript.

[¶ 30] If we are to give meaning to the language of our standard of review, especially the idea that we accept the district court's findings of fact unless they are clearly erroneous, we cannot in this case reverse the district court's damage award as it relates to the inclusion of landscape and hardscape costs in its computation of the amount of damages. What we are faced with is an assertion by counsel that $127,295.36 should be added to landscape and hardscape costs because amounts reflected in various invoices total that sum. However, the district court relied upon specific numbers from a different exhibit, which means that there was an underlying evidentiary basis for the district court's conclusion. In that situation, we cannot say the district court was wrong just because other exhibits *may have* suggested that other numbers were correct. CC Builders has not met its burden of proving that the district court's findings of fact were clearly erroneous.

▮ [¶ 31] The second issue raised in CC Builders' cross-appeal is the amount of employee bonus and incentive costs billed to the

Garrisons that the district court found to be unreasonable. That amount—$123,592.00—was added as an "overcharge" in determining the final judgment amount owed by CC Builders to the Garrisons. *See supra* ¶ 12. The actual finding of the district court was as follows:

> g) Overcharged: Bonuses/Incentives. The management incentives and bonuses were a portion of the pay packages for the CC Builders employees working the Garrison house. Experts Wilkinson, Ciocarlin and Chandler all testified that management incentives and bonuses are a cost of doing business, and it is appropriate to pass these costs on to the owner. The Court will give more weight to Ciocarlin's testimony that the bonuses and incentives charged by CC Builders of $123,592.00 were excessive and not in accordance with industry and custom. These charges, which include 33% labor bonuses and 12% overhead and profit, were not reasonable and proper. [CC Builders'] expert, Chandler, also expressed an opinion that the Lund bonus plus a month off "seemed high." [The Garrisons] should not be responsible for this amount.

[¶ 32] CC Builders contends that, although $110,350.00 in employee bonuses and incentives may have been "attributable" to the Garrisons' project, the Garrisons actually were only invoiced directly for $37,200.00 of that amount.[6] As explained by Lisa Cook, the process was this: CC Builders actually paid its employees $82,970.00 for bonuses and incentives attributable to the Garrisons' project. Of that amount, the Garrisons were invoiced directly only $37,200.00, with the balance paid out of the "labor burden" that was otherwise charged to the Garrisons. The 12% overhead and profit figure was added to the $37,200.00, but not to the balance that came out of the labor burden percentage.

[¶ 33] Even considering Mrs. Cook's explanation of the method of payment, we cannot conclude that the district court's finding, that such amounts were unreasonable, was clearly erroneous. Timothy Ciocarlin testi-

fied, for instance, that these amounts "far exceed[ ] any bonus that I've ever heard of and seen." In particular, he singled out the $54,000.00 bonus paid to Kurt Lund as being "excessive because it's almost a year's pay for a good paid superintendent."

### *Are the district court's conclusions of law as to damages inconsistent with its findings of fact?*

[¶ 34] The specifics of this allegation are very hard to identify in the Garrisons' brief. We believe the allegation is summed up in the following paragraph quoted therefrom:

> With the trial court's finding that the parties had formed an oral cost-plus contract, the [Garrisons] are only obligated to pay the "fair and reasonable costs of construction". By this finding, the damage award to which the [Garrisons] are entitled is the difference between the total amount paid by the [Garrisons] to [CC Builders] and the fair and reasonable cost of construction. The trial court erred by failing to award the proper contract damages to the [Garrisons].

[¶ 35] In reality, this issue is merely a "rehash" of the Garrisons' first issue. Rather than directing this Court's attention to specific inconsistencies between the district court's findings of fact and conclusions of law, or pointing out the district court's alleged errors of law in computing damages, the Garrisons simply reargue the facts, from their perspective, and with the assumption that their expert's testimony was unimpeached. This, of course, is little more than an attempt to get us to reweigh the evidence, which we will not do. *Hayzlett v. Hayzlett*, 2007 WY 147, ¶ 8, 167 P.3d 639, 642 (Wyo. 2007).

[¶ 36] The major difficulty with the Garrisons' argument is their belief that, but for their expert's testimony, there was no evidence from which the district court could determine the reasonable cost of construction of the house. In truth, as found by the district court, the *total* reasonable cost was made up of many "sub-costs," for which there

---

6. It is unclear why the trial testimony discussed a total of $110,350.00 for bonuses and incentives, as opposed to the $123,592.00 figure found by the district court.

was a considerable amount of testimony on both sides. The best example, perhaps, is the custom of contractors assessing a "labor burden" under construction contracts. "Labor burden" includes non-discretionary indirect labor costs, such as workers' compensation and unemployment insurance premiums, and payroll taxes. Succinctly stated, the Garrisons' position is that, because CC Builders did not assess its labor burden precisely as did the Garrisons' expert, CC Builders' assessment was unreasonable. But if the testimony of the various experts is compared, it becomes clear that no two contractors in Teton County assess labor burden exactly the same way. In turn, it cannot be said that the district court was unreasonable in concluding, as it did, that aside from certain bonus and incentive charges, the Garrisons had not shown CC Builders' labor burden charges to be improper.[7]

[¶ 37] The Garrisons couch this issue in terms of the district court not following its own announced methodology in determining the damage award. That "methodology" was for the district court to attempt to determine the reasonable value of construction. That is what the district court did, but the Garrisons believe that the district court did not use the right numbers in doing so, resulting in an inconsistency between its findings of fact and its conclusions of law. We disagree. The district court simply used different numbers derived from the evidence presented than the numbers the Garrisons would have preferred.

### Did the district court err in concluding that CC Builders had not committed fraud?

[¶ 38] Count II of the Garrisons' Complaint alleged that CC Builders had fraudulently induced them to enter into the construction project by promising that the house would cost $350 per square foot to build. It also alleged that CC Builders had fraudulently charged them improperly for certain labor costs, and had misappropriated construction materials. The district court's Judgment contains numerous findings and conclusions relevant to these accusations: (1) CC Builders did not promise to build the house for $350 per square foot; (2) the Garrisons were not billed for any materials not used in the project; (3) some employee incentives and bonuses billed by CC Builders to the Garrisons were unreasonable because they were outside industry custom; and (4) CC Builders was not guilty of fraud.

[¶ 39] On appeal, the Garrisons argue that the district court failed to make any findings or reach any conclusions as to the fraud allegation relating to CC Builders' labor billing practices, and they further argue that the district court should have found CC Builders guilty of fraud because of the confidential relationship that arose out of the friendship between the Garrison and Cook families. Having thoroughly combed the record, we agree with the district court that the Garrisons did not prove their fraud claims against CC Builders. To prove fraud, the plaintiff must show by clear and convincing evidence that (1) the defendant made a false representation intended to induce action by the plaintiff; (2) the plaintiff reasonably believed the representation to be true; and (3) the plaintiff suffered damages in relying upon the false representation. *Bitker v. First Nat'l Bank in Evanston*, 2004 WY 114, ¶ 12, 98 P.3d 853, 856 (Wyo.2004). Fraud is never presumed. *Id.* Evidence is clear and convincing if it persuades the trier of fact that the truth of the contention is highly probable. *Alexander v. Meduna*, 2002 WY 83, ¶ 29, 47 P.3d 206, 216 (Wyo.2002). Where "actual fraud" has not been shown, a defendant may still be guilty of "constructive fraud" in situations where a special confidential relationship between the parties created a fiduciary duty in the defendant to act with the plaintiff's interests in mind. *Johnson v. Reiger*, 2004 WY 83, ¶¶ 22, 24, 93 P.3d 992, 998, 999 (Wyo.2004).

[¶ 40] We do not see clear and convincing evidence of actual fraud anywhere in the record. The district court's finding that the parties entered into a cost-plus contract,

---

7. Jeff Wilkinson, a certified public accountant, testified that his clients include about two dozen Teton County contractors, and that labor burden could include any of various direct and indirect costs associated with an employee, including vacation, overtime, health insurance, pension, tool repairs, vehicle reimbursement, and bonuses.

rather than a per-square-foot contract is not clearly erroneous. Furthermore, there is simply no evidence of a false representation by CC Builders in that regard, much less detrimental reliance thereon by the Garrisons. The reasonable cost of construction was a moving target throughout construction, given the fact that construction commenced without a formal set of plans having been completed, and given the changes authorized along the way. Finally, we are unwilling to find a confidential relationship under these facts that would support constructive fraud. The casual friendship between the two families does not suffice in that regard, and it certainly does not do so in this case, where Mr. Garrison was a successful and sophisticated businessman.[8] We are also unwilling to hold that the existence of a cost-plus construction contract always creates a fiduciary relationship between the contractor and the owner. *See Johnson*, 2004 WY 83, ¶ 25, 93 P.3d at 999 ("Fiduciary relationships are extraordinary and not easily created").

[¶ 41] In regard to their fraud count relating to labor charges, the Garrisons allege that CC Builders' monthly statements contained hidden salary and labor charges that were not customary in the industry. This allegation must fail primarily because the testimony of industry custom and practice was not sufficiently uniform to establish that any deviation therefrom must be fraudulent. In addition, the evidence does not show that CC Builders misrepresented anything to the Garrisons; instead, its monthly invoices simply did not detail individual salary and labor computations. The district court found that, at most, some of these charges were not reasonable, and therefore exceeded the reasonable cost of a "cost plus" contract. The evidence supports that conclusion, especially because, to find out the details of the billing, the Garrisons simply would have had to ask CC Builders for the information, which they never did.

### Did the district court abuse its discretion in its award of costs to the Garrisons?

[¶ 42] Wyo. Stat. Ann. § 1–14–124 (LexisNexis 2007) provides that costs "shall be allowed to a plaintiff upon a judgment in his favor in an action for the recovery of money...." Similarly, W.R.C.P. 54(d)(1) provides that costs "shall be allowed as of course to the prevailing party unless the court otherwise directs[.]" U.R.D.C. 501(a)(3) sets forth the guidelines governing allowable costs, while U.R.D.C. 501(a)(4) makes it clear that the guidelines are not mandatory, but that the trial court decision as to whether to award lawful costs is discretionary. We review the taxation of costs upon an abuse of discretion standard. *Garnick v. Teton County Sch. Dist. No. 1*, 2002 WY 18, ¶ 35, 39 P.3d 1034, 1049 (Wyo.2002). The relevant question is whether the trial court reasonably could have concluded as it did, given the circumstances. *Snyder v. Lovercheck*, 992 P.2d 1079, 1084 (Wyo.1999).

[¶ 43] Nine days after entry of the Judgment in this case, the Garrisons filed a Bill of Costs totaling $11,042.70. CC Builders filed a timely objection. The matter was heard on March 20, 2007, and the Garrisons' costs were awarded as requested by an Order entered on June 1, 2007. The district court found the "amount of costs to be paid by [CC Builders] are fair and reasonable and in proportion to the Judgment...."

[¶ 44] In the third of these related appeals, CC Builders has challenged this award of costs. The entire Bill of Costs is based upon the expense of pre-trial depositions. U.R.D.C. 501(a)(3)(D) governs the award of such costs:

(D) Costs of depositions.

(i) Costs of depositions are taxable if reasonably necessary for the preparation of the case for trial. A deposition is deemed reasonably necessary if:

I. Read to the jury as provided in Rule 32(a)(3), W.R.C.P.;

II. Used at trial for impeachment concerning a material line of testimony (impeachment on a collateral issue does not fall within the scope of this rule);

---

8. Wayne Garrison, a self-made multi-millionaire, was the president and chief executive officer of J.B. Hunt Transport, the nation's largest trucking firm.

III. Necessarily, and not merely conveniently, used to refresh the recollection of a witness while on the stand; or,

IV. Was taken at the request of a nonprevailing party.

The foregoing are meant to provide guidelines, and are not exhaustive. The use of depositions for trial preparation alone does not justify the imposition of costs.

(ii) Reporters fees for depositions. Actual, ordinary reporting fees will · be allowed. Extra costs for expediting transcripts or daily copy costs will not be allowed, except as authorized by an order entered prior to the date such costs are to be incurred. Reporters' travel, per diem expenses and appearance fees will not be taxed as costs.

(iii) Fees and expenses of counsel. Fees and expenses of counsel for traveling to and attending depositions are not taxable as costs.

[¶ 45] The burden is upon the party seeking the award of discovery deposition costs to show that those costs were reasonably necessary for trial preparation, in that they met one of the guidelines of U.R.D.C. 501(a)(3)(D), or an equivalent rationale. *Cundy Asphalt Paving Constr. v. Angelo Materials Co.*, 915 P.2d 1181, 1183–84 (Wyo.1996). A verified bill of costs is *prima facie* evidence that the items listed were necessarily expended and are properly taxable as costs. 20 Am.Jur.2d *Costs* § 91 (2005).

[¶ 46] CC Builders' objection to an award of costs to the Garrisons begins with the argument that the Garrisons should not even be considered the "prevailing party" under W.R.C.P. 54(d) because they did not prevail on several of their contract breach claims, on their fraud claim, or on their negligent misrepresentation claim, and CC Builders substantially prevailed on its counterclaim, thereby reducing the judgment amount. In support of this contention, CC Builders cites several cases where federal courts have interpreted Fed.R.Civ.P. 54(d) as giving trial courts broad discretion *to deny* an award of costs in cases with "mixed outcomes." *See*

*Testa v. Village of Mundelein*, 89 F.3d 443, 447 (7th Cir.1996); *ARP Films, Inc. v. Marvel Entm't Group, Inc.*, 952 F.2d 643, 651 (2d Cir.1991); *Johnson v. Nordstrom–Larpenteur Agency, Inc.*, 623 F.2d 1279, 1282 (8th Cir.1980); *Tao of Systems Integration, Inc. v. Analytical Servs. & Materials, Inc.*, 412 F.Supp.2d 571, 574 (E.D.Va.2006); *All West Pet Supply Co. v. Hill's Pet Products Div.*, 153 F.R.D. 667, 669 (D.Kan.1994).

[¶ 47] We believe that the instant case fundamentally was a breach of contract case, won for the most part by the Garrisons. The district court did not abuse its discretion in finding the Garrisons to be the prevailing party and in awarding their costs. The central issue—whether the Garrisons had been overcharged under the "cost plus" construction contract—was determined in their favor. The fact that the final judgment amount was less than what they sought does not mean they did not prevail for the purpose of awarding costs.

[¶ 48] The district court's award of costs cannot, however, survive completely unscathed. The Garrisons' Bill of Costs was not verified and thus does not obtain the status of *prima facie* evidence of the amounts sought. Furthermore, of the ten discovery depositions for which the Garrisons sought an award of costs, only two were used at trial—those of Larry Berlin and Kurt Lund. As admitted by CC Builders, three of the remaining depositions—those of Wayne Garrison, Pamela Garrison, and Tim Ciocarlin—were noticed by CC Builders, and the appropriate costs related thereto are awardable to the Garrisons. But there is no substantiation for an award of costs for the five remaining depositions.

[¶ 49] We have said more than once that the criteria in U.R.D.C. 501(a)(3)(D) are guidelines, rather than being an exhaustive list. *Gore v. Sherard*, 2002 WY 114, ¶ 21, 50 P.3d 705, 711–12 (Wyo.2002); *Snyder v. Lovercheck*, 2001 WY 64, ¶ 15, 27 P.3d 695, 700 (Wyo.2001). At the same time, however, the Rule clearly requires a showing of something more than use of the deposition for trial preparation. Unfortunately, the record in the instant case does not contain a transcript

of the district court hearing on the motion to award costs, so we do not know what arguments may have been advanced by the Garrisons at that time. Beyond that, the district court's finding that the amounts were "fair and reasonable and in proportion to the Judgment" does not reveal any analysis under the Rule. In their appellate brief, the Garrisons justify the award of costs on dual grounds: that all of the deponents testified at trial, and that the discovery was necessary to determine the reasonable cost of construction of the house.

[¶ 50] We conclude that the Garrisons have not overcome the limiting language of U.R.D.C. 501(a)(3)(D) in regard to the five discovery depositions that were neither used at trial nor noticed by CC Builders. Consequently, we will reverse the award of costs as to those depositions. The remaining five—those of Larry Berlin, Kurt Lund, Wayne Garrison, Pamela Garrison, and Tim Ciocarlin—are eligible under the Rule, but require further analysis.

[¶ 51] Costs were awarded for Larry Berlin's deposition in the total amount of $1,748.25. The individual charges were as follows:

| | |
|---|---|
| 428 pages | $1,565.50 |
| Appearance fees | 135.00 |
| Computer disks | 20.00 |
| Preparation/handling | 10.00 |
| Exhibits | 17.75 |
| TOTAL | $1,748.25 |

[¶ 52] We interpret U.R.D.C. 501(a)(3)(D)(ii) as allowing an award of costs for the per page and exhibit fees, but not for the appearance fees or extraordinary fees such as computer disks, and preparation and handling. Deducting those latter amounts from the total, the award of costs for Larry Berlin's deposition should have been $1,583.25.

[¶ 53] The total cost award for Kurt Lund's depositions was $3,650.50. Our math, which follows, shows a corrected total of $3,620.50:

| | |
|---|---|
| 703 pages | $2,636.25 |
| Exhibits/photographs | 34.25 |
| Appearance fees | 225.00 |
| Videography | 710.00 |
| Preparation/handling | 15.00 |
| TOTAL | $3,620.50 |

[¶ 54] Following the same logic applied to the Berlin deposition, this total must be reduced by the amount of the appearance fees, and the extraordinary fees for videography, and preparation and handling, leaving a total awardable amount of $2,670.50.

[¶ 55] The Garrisons sought an award of costs for the deposition of Wayne Garrison, but the invoices related thereto apparently could not be located, and the amounts were not included in the Bill of Costs or the award. As to Pamela Garrison, the Bill of Costs sought $894.00, and that amount was awarded. However, there is no invoice in the record detailing this cost, and therefore, there is no indication in the record that the district court exercised any discretion in awarding that sum. We conclude that the award was arbitrary, and must be reversed.

[¶ 56] Costs sought and awarded for the depositions of Tim Ciocarlin totaled $661.45, even though the invoices attached to the Bill of Costs show the following amounts assigned to his various depositions:

| | |
|---|---|
| 299 pages | $ 433.55 |
| Exhibits | 56.10 |
| Computer disk | 10.00 |
| Preparation/handling | 10.00 |
| 149 pages | 216.05 |
| Exhibits | 41.45 |
| Preparation/handling | 10.00 |
| 92 Pages | 151.80 |
| TOTAL | $ 928.95 |

[¶ 57] The amount awarded appears to be the sum of the amounts related to the 299 page deposition, and the 92 page deposition. The record does not reflect why the costs of the 149 page deposition were not included. We will not include those costs on our own initiative. Subtracting the computer disk and preparation and handling fees, the correct amount of the award should have been $641.45.

[¶ 58] Pursuant to these calculations, the costs awarded in the Judgment must be reduced from $11,042.70 to $4,895.20.

## CONCLUSION

[¶ 59] The district court's findings of fact are not clearly erroneous, its conclusions of

law are not inconsistent with its findings of fact, and it did not err in concluding that the Garrisons had failed to prove by clear and convincing evidence that CC Builders committed fraud. The Judgment, as reduced by the district court upon remand to $72,062.77, is affirmed. The award of costs, however, must be reduced to $4,895.20, and we remand to the district court for entry of a new judgment in the appropriate amount.