2011 WY 7

**Thomas L. WILSON and Helen L. Wilson, Husband and Wife, Appellants (Petitioners),**

v.

**Patrick T. TYRRELL, in His Capacity as State Engineer for the State of Wyoming, Appellee (Respondent),**

and

**Lucerne Canal and Power Company, Appellee (Intervenor).**

**Thomas L. Wilson and Helen L. Wilson, Appellants (Plaintiffs),**

v.

**Lucerne Canal and Power Company, Appellee (Defendant).**

Nos. S–10–0054, S–10–0055, S–10–0119.

Supreme Court of Wyoming.

Jan. 19, 2011.

See also 77 P.3d 412.

Representing Appellants: Frank J. Jones of Wheatland, Wyoming.

Representing Appellee Patrick T. Tyrrell, in his capacity as Wyoming State Engineer, in Case No. S–10–0054: Bruce A. Salzburg, Wyoming Attorney General; Jay A. Jerde, Deputy Attorney General; Peter K. Michael, Senior Assistant Attorney General; S. Jane Caton, Senior Assistant Attorney General. Argument by Ms. Caton.

Representing Appellee Lucerne Canal and Power Company: Harriet M. Hageman and Kara Brighton of Hageman & Brighton, P.C. Argument by Ms. Hageman.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

VOIGT, Justice.

[¶ 1] The three appeals consolidated for decision in this opinion all arise out of a decades-old dispute between Thomas L. Wilson and Helen L. Wilson (the Wilsons) and Lucerne Canal and Power Company (Lucerne). The *casus belli* is Lucerne's use of an old river channel to carry irrigation water across land owned by the Wilsons. This is the third round of the dispute that has reached this Court. We affirm in part, reverse in part, and remand to the district court for entry of an order consistent herewith.

## BACKGROUND

[¶ 2] Before we set out the issues presently facing the Court, we will briefly present the factual context in which those issues have arisen. For more detailed recitations of the facts, *see Wilson v. Lucerne Canal and Power Company*, 2003 WY 126, 77 P.3d 412 (Wyo.2003) (*Wilson I* ) and *Wilson v. Lucerne Canal and Power Company*, 2007 WY 10, 150 P.3d 653 (Wyo.2007) (*Wilson II* ). A sketch map attached as an exhibit to the opinion in *Wilson II* shows the area in controversy.

[¶ 3] In 1893, Lucerne obtained and perfected a right to appropriate water from the North Platte River, with the point of diversion located on unpatented lands in Goshen County. The river was divided into two channels in the area, with the headgate to Lucerne's canal located at its adjudicated point of diversion on the eastern channel. In 1913, because of insufficient flow down that channel, Lucerne constructed a diversion dam upstream on the main channel, to divert water into the eastern channel. That diversion dam contains no headgate or other "check structure" that can measure or control the amount of water diverted into the eastern channel. Edwin R. Hisey obtained the patent to the land in 1908. The Wilsons purchased the property in 1964. *Wilson II*, 2007 WY 10, ¶¶ 4–6, 150 P.3d at 656.

[¶ 4] Squabbles arose over the years between the Wilsons and Lucerne, in which the Wilsons accused Lucerne of trespassing upon and damaging their property, and in which Lucerne accused the Wilsons of interfering with Lucerne's right to use its appropriated water. In 1988, Lucerne filed suit against the Wilsons, seeking damages and injunctive relief due to the Wilsons' alleged blocking of access to Lucerne's irrigation facilities. *Wilson I*, 2003 WY 126, ¶ 1, 77 P.3d at 413–14. This lawsuit was resolved in 1990 via a Consent Decree and Judgment that recognized Lucerne's easement and right-of-way across the Wilsons' land for the purpose of access to, and maintenance of, its irrigation facilities. *Id.* at ¶ 4, at 414; *Wilson II*, 2007 WY 10, ¶ 13, 150 P.3d at 658.

[¶ 5] Lucerne sought district court intervention again in 2002, this time alleging that

the Wilsons had constructed an earthen berm or dike in the eastern channel that interfered with the flow of water downstream to Lucerne's headgate. *Wilson I*, 2003 WY 126, ¶ 16, 77 P.3d at 418; *Wilson II*, 2007 WY 10, ¶ 16, 150 P.3d at 659–60. The district court entered a permanent injunction prohibiting the Wilsons from interfering with Lucerne's use of its access easement and its irrigation facilities. We affirmed that decision in *Wilson I*, 2003 WY 126, ¶ 21, 77 P.3d at 419.

[¶ 6] Taking their turn as plaintiffs, the Wilsons filed suit in 2004, seeking to quiet title against Lucerne to the land underlying the old eastern channel and the land between that channel and the main western channel. They also sought trespass damages, alleging that Lucerne was transporting excessive amounts of water down the eastern channel. *Wilson II*, 2007 WY 10, ¶ 19, 150 P.3d at 660. After a bench trial, the district court held that the eastern channel remained a river channel, that Lucerne's use of the channel and its irrigation facilities had not changed since the 1990 settlement, and that the Wilsons' claims were barred by the doctrines of judicial estoppel, collateral estoppel, and *res judicata*. *Id.* at ¶¶ 20, 21, at 661–62.

[¶ 7] In *Wilson II*, 2007 WY 10, ¶¶ 24–28, 150 P.3d at 662–64, we affirmed the district court's application of estoppel and *res judicata*, insofar as those doctrines prohibited the Wilsons from contesting Lucerne's right to access and use its facilities, including the eastern channel. We disagreed with the district court, however, on the separate quiet title issue, which we did not find to be barred by the earlier lawsuits or settlement. We concluded that reliction had occurred, that the Wilsons' property line was now the thread of the western river channel, and we remanded to the district court for entry of an order quieting title to the property in the Wilsons, subject to Lucerne's easements. *Id.* at ¶ 35, at 667. Of special significance in the current controversy is our specific holding that the district court had erred in concluding that the eastern channel remained part of the river. *Id.* at ¶ 32, at 666.

### Docket No. S–10–0054

[¶ 8] In the first of the three consolidated cases now under consideration, Docket No.

S–10–0054, the Wilsons are the appellants, the State Engineer is an appellee, and Lucerne, who intervened below, is also an appellee. The case began on April 11, 2007, when the Wilsons' attorney sent a letter to the superintendent of Water Division No. 1, asking the superintendent to require Lucerne to construct a headgate at its diversion dam on the North Platte River.[1] Relying upon this Court's holding in *Wilson II* that the eastern channel was no longer part of the river, the Wilsons cited Wyo. Stat. Ann. § 41–3–613 (LexisNexis 2009) for the proposition that "Lucerne has no choice but to construct a substantial headgate" at the diversion dam. Section 41–3–613 provides in pertinent part as follows:

The owner or owners of any ditch or canal shall maintain, to the satisfaction of the division superintendent of the division in which the irrigation works are located, a substantial headgate at the point where the water is diverted, which shall be of such construction that it can be locked and kept closed by the water commissioner; and such owners shall construct and maintain, when required by the division superintendent, flumes or other measuring devices at such points along such ditch as may be necessary for the purpose of assisting the water commissioner in determining the amount of water that is to be diverted into said ditch from the stream, or taken from it by the various users. . . .

[¶ 9] In a letter dated April 20, 2007, the division superintendent denied the Wilsons' request. His reasoning may be summarized as follows: (1) this Court's opinion in *Wilson II* did not change his belief that Lucerne's "appropriation is being diverted at a properly recorded point of diversion"; (2) the continued use of the upper diversion dam was supported by this Court's holding that title to the property at issue was quieted in the Wilsons, subject to Lucerne's continued right to transport water from the diversion dam to its headgate; and (3) the district court had determined that the eastern channel continues to be a river channel, and the "Supreme

Court did not reverse this finding in its opinion[.]"

[¶ 10] On May 9, 2007, the Wilsons appealed the decision of the division superintendent to the State Engineer. In that appeal, the Wilsons presented three interrelated arguments: (1) Lucerne's adjudicated point of diversion no longer was on the river; (2) the point at which Lucerne diverts water—the diversion dam—is not its adjudicated point of diversion; and (3) Wyo. Stat. Ann. § 41–3–613 requires Lucerne to maintain a headgate at the diversion dam.

[¶ 11] The State Engineer confirmed the decision of the division superintendent in a letter to the Wilsons' attorney dated May 23, 2007. Citing *Wilson II,* the State Engineer concluded that this Court had approved Lucerne's continued use of the diversion dam and the eastern channel to deliver water to its properly recorded point of diversion, where a lockable control structure was located. Specifically relevant to the issues we now consider, the State Engineer "[did] not find in the Supreme Court decision any direction that the diversion (including the [eastern] channel) is to be used in any fashion different from its historic operation."

[¶ 12] On June 22, 2007, the Wilsons filed in the district court a notice of appeal of the decision of the State Engineer. After considerable procedural wrangling, the district court allowed the Wilsons to amend that pleading, and an Amended Petition for Review was filed on May 23, 2008. Generally, the Wilsons alleged that the decisions of the division superintendent and the State Engineer were contrary to law, were unsupported by the evidence, and were arbitrary and capricious.

[¶ 13] The district court issued its Order Affirming State Engineer's Action on November 24, 2009. Preliminarily, the district court concluded that the Wilsons had failed to prove that Lucerne's historic two-part diversion was contrary to law, or that the division superintendent and State Engineer had acted arbitrarily or capriciously in refus-

---

1. The power and duties of division superintendents are set out in Wyo. Stat. Ann. §§ 41–3–502 through 41–3–504 (LexisNexis 2009).

ing to order Lucerne to change that historic use.[2] The district court also concluded that, by virtue of the 1990 stipulation, the Wilsons were judicially "estopped from now attempting to force a significant change in the diversion and headgate." The Wilsons' appeal of this order is the case now before us in Docket No. S–10–0054.

### Docket No. S–10–0055

[¶ 14] This appeal is the successor in interest to *Wilson II*, wherein this Court remanded the case to the district court for entry of an order quieting title to the underlying property in the Wilsons, subject to Lucerne's right to an easement to transport water from its diversion dam to its headgate, which easement was to be identified and located. *Wilson II*, 2007 WY 10, ¶ 35, 150 P.3d at 667. Subsequent to the remand, the parties were unable to agree upon the form of a quiet title order, and were unable to agree upon a description of Lucerne's easement. Consequently, the district court set a hearing to determine the location of the easement.

[¶ 15] The hearing was set for November 9 and 10, 2009. On September 14, 2009, the Wilsons filed a pre-trial disclosure statement that listed Cotton Jones as a "may call" witness. Lucerne responded with a motion *in limine*, seeking to prevent Jones from testifying because the Wilsons had not complied with the requirements of W.R.C.P. 26(a)(2) for the disclosure of expert testimony. The district court heard arguments on the motion prior to the start of the hearing and took the matter under advisement. During the trial, the issue was again discussed, this time at an unreported bench conference, after which the district court granted the motion. At the end of the hearing, the Wilsons submitted an offer of proof, outlining Jones' proposed testimony. The gist of that

testimony was that Jones, a licensed surveyor, had surveyed the eastern channel and had prepared a report containing the survey.

[¶ 16] Lucerne's two key witnesses at the hearing were Robert W. Taylor, the licensed surveyor who prepared the survey and easement submitted by Lucerne, and Gordon W. Fassett, a former Wyoming State Engineer. Without delving into the details of their testimony, suffice it to say that they both agreed that a rather well-delineated bank on the eastern side of the eastern channel permitted a relatively definitive description, but the low flat lands on the western side of the channel were not conducive to such a description, with a good deal of fluctuation as to the water's edge on that "bank" at any given time. A focal point of contention during the hearing was Taylor's inclusion in the easement of a three-foot vertical "freeboard" above the surveyed channel, the purpose of which was to provide for unexpected high water events.

[¶ 17] The district court entered its Order on Location of Easement on November 24, 2009. The essential findings and conclusions of that order, which is the subject of this appeal, may be re-stated as follows:

1. The doctrines of *res judicata* and judicial estoppel bar the Wilsons from contesting Lucerne's right to continue its historic use of the eastern channel to carry water between its diversion dam and its headgate, and to operate its irrigation system as it historically has done, with the same flows.

2. Lucerne has historically used the eastern channel as a naturally occurring river channel, irregular in size and shape, and with the amount of flow determined only by the amount of water coming down the river toward Lucerne's diversion dam.

2. It must be pointed out that, in outlining the context of the case, the district court erroneously stated that the eastern channel remains part of the river and that this Court, in *Wilson II*, had only quieted title to the "island" lying between the channels. That is contrary to the holding in *Wilson II*, which was that the eastern channel is no longer a river channel, and that reliction also gave the Wilsons title to the land underlying that channel. That fact, of course, is what led to the

conclusion that Lucerne's right to use that channel as part of its stipulated "irrigation facilities" should be located as an easement. *See Wilson II*, ¶¶ 30–33, 150 P.3d at 664–67. While that erroneous statement by the district court led to the State Engineer and Lucerne presenting in the related cases considerable evidence and argument as if the eastern channel was still a river channel, our ultimate resolution of this case has not been affected thereby.

3. The eastern channel, as historically used, has no significant bank or boundary on its west side.

4. Lucerne's water delivery system requires the diversion of more water down the eastern channel than Lucerne's appropriation, to account for loss and to assure a sufficient flow to operate the downstream headgate.

5. The location of the eastern channel is readily recognized on the ground, but if a written easement is necessary to show the area of Lucerne's permitted use, the Taylor survey submitted into evidence adequately describes the area.

6. The three-foot freeboard area included in the Taylor survey is a necessary "buffer area" for use during unforeseen high-water flows, although Lucerne may not intentionally use the freeboard area to convey water.

### Docket No. S-10-0119

[¶ 18] In this third appeal, the Wilsons challenge the district court's award of costs to Lucerne in the case now pending in Docket No. S-10-0055. The Wilsons' contentions revolve around the sequence of filings that resulted in the award of costs, which they argue violated U.R.D.C. 501. The Wilsons recite that sequence as follows:

1. The Order on Location of Easement was filed on November 24, 2009.

2. Lucerne filed its certificate of costs on January 5, 2010, forty-two days later.

3. The district court signed the order approving Lucerne's certificate of costs on January 6, 2010, one day after it was filed.

4. The Wilsons filed a response to the certificate of costs, with detailed objections, on January 18, 2010.

5. The order approving the certificate of costs was filed, without hearing, on April 27, 2010.

[¶ 19] The Wilsons complain that (1) the certificate of costs was not timely, inasmuch as U.R.D.C. 501(a)(1) requires that it be filed within twenty days after entry of the final judgment allowing costs; (2) costs were awarded without the court hearing the Wilsons' objections, in violation of U.R.D.C.

501(a)(2); and (3) some of the costs awarded are not allowable under the U.R.D.C. 501.

[¶ 20] Lucerne responds to the Wilsons' contentions by noting first that the November 24, 2009, order was not seen at the time it was filed as the final judgment, and it did not address costs. Both parties subsequently filed proposed judgments, and the district court set a hearing to consider the proposed judgments. During that hearing, which took place on December 17, 2009, the district court ruled that the November 24, 2009, order would serve as the final judgment and then permitted Lucerne to submit a certificate of costs. Lucerne filed its certificate of costs nineteen days later. Beyond that, Lucerne contends that there was no abuse of discretion in the award of costs.

### ISSUES

[¶ 21] 1. Was the decision of the State Engineer that Lucerne's headgate at its adjudicated point of diversion satisfies the requirements of Wyo. Stat. Ann. § 41-3-613 contrary to law?

2. Was the decision of the State Engineer that Lucerne is not required to install a headgate at its diversion dam arbitrary and capricious?

3. Did the district court fail to follow the mandate of the Supreme Court upon remand?

4. Are the district court's findings of fact clearly erroneous?

5. Did the district court abuse its discretion by excluding the testimony of the Wilsons' proposed expert witness?

6. Was Lucerne's certificate of costs timely filed?

7. Did the district court abuse its discretion in awarding costs to Lucerne?

### DISCUSSION

*Was the decision of the State Engineer that Lucerne's headgate at its adjudicated point of diversion satisfies the requirements of Wyo. Stat. Ann. § 41-3-613 contrary to law?*

[¶ 22] In reviewing the actions of an administrative agency, "we give no special

deference to the decision of the district court, but consider the case as if it came directly from the agency." *Northfork Citizens for Responsible Dev. v. Bd. of County Comm'rs of Park County*, 2010 WY 41, ¶ 16, 228 P.3d 838, 844 (Wyo.2010). Pursuant to W.R.A.P. 12.09(a), our review of administrative agency action is "limited to a determination of the matters specified in Wyo. Stat. 16–3–114(c) [ (LexisNexis 2009) ]." We have set forth that statute in detail many times and it is not necessary to do so again here. Suffice it to say that one of our review obligations under the statute, when the question is raised, is to determine whether the agency's decision was contrary to law. Wyo. Stat. Ann. § 16–3–114(c)(ii)(A). We review an agency's conclusions of law *de novo*, and we affirm those conclusions if they are in accordance with the law. *Dale v. S & S Builders, LLC*, 2008 WY 84, ¶ 26, 188 P.3d 554, 561–62 (Wyo.2008); *Basin Elec. Power Coop. v. Dep't of Revenue*, 970 P.2d 841, 850 (Wyo.1998).

[¶ 23] At issue is the State Engineer's interpretation of the following language found in Wyo. Stat. Ann. § 41–3–613:

> The owner or owners of any ditch or canal shall maintain, to the satisfaction of the division superintendent of the division in which the irrigation works are located, a substantial headgate at the point where water is diverted....

[¶ 24] In *Wilson II*, 2007 WY 10, ¶¶ 32, 34, 150 P.3d at 666, 667, this Court concluded that, because it was sustained only by Lucerne's upstream diversion dam, the eastern channel was no longer a river channel, and was "now operated in fact as an irrigation canal."[3] The Wilsons seized upon this conclusion and, in light of the above statutory language, demanded of the division superintendent that he require Lucerne to construct a headgate at the diversion dam. The superintendent declined, reasoning that the Supreme Court opinion had not changed his view that "there is an adequate and appropriate headgate to allow regulatory and priority administration." In confirming the

decision of the superintendent, the State Engineer noted that this Court had approved Lucerne's historical use of its irrigation facilities, that Lucerne had the right to transport water from the diversion dam to its headgate, and that its headgate is located at its permitted point of diversion.

[¶ 25] The district court agreed with the State Engineer's interpretation and application of the statute in this instance, and we will do likewise. While Wyo. Stat. Ann. § 41–3–613 might *allow* the division superintendent to require Lucerne to install a headgate at or near the diversion dam, the statute does not *mandate* that the division superintendent do so. Because of the undisputed facts of this case, in particular the historical use of the "dual diversion" and the location of a suitable headgate at the adjudicated point of diversion, the division superintendent and the State Engineer found the system to be maintained to their satisfaction, which is all that the statute requires. The statute does not directly address the question of what is to happen if a river moves to a different channel and the old channel loses its flow of water. The division superintendent and the State Engineer concluded in this case that Lucerne's right to convey water to its legally sufficient headgate was satisfactory under the statute, and we have been shown no law to the contrary.

### Was the decision of the State Engineer that Lucerne is not required to install a headgate at its diversion dam arbitrary and capricious?

[¶ 26] Before we begin discussion of this issue, we will briefly mention that the Wilsons raised in their brief, but did not separately argue the question of whether the State Engineer's decision was supported by substantial evidence. In their responsive briefs, both the State Engineer and Lucerne agreed with the district court's citation to *Newman v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2002 WY 91, ¶ 22, 49 P.3d

---

3. Much deposition time, trial time, and appellate time would have been saved had we, perhaps, used the word "ditch" rather than the word "canal." We did not mean to imply that the naturally occurring channel had somehow been transformed into a concrete-lined symmetrical irrigation canal. The point of the observation was that Lucerne was operating the channel as part of its irrigation facilities.

163, 171 (Wyo.2002), for the proposition that the substantial evidence test does not apply in the absence of a contested case proceeding. We here simply note that the substantial evidence test is now the appropriate test to be applied "anytime we are reviewing an evidentiary issue." *Dale,* 2008 WY 84, ¶ 25, 188 P.3d at 561. So, although the evidentiary issue was mentioned, the matter has been treated as one of arbitrary and capricious conduct, and we will follow that lead.

[¶ 27] Wyo. Stat. Ann. § 16–3–114(c)(ii)(A) directs the reviewing court to set aside agency action found to be arbitrary or capricious. We have defined that test as follows:

The arbitrary and capricious test requires the reviewing court to review the entire record to determine whether the agency reasonably could have made its finding and order based upon all the evidence before it. The arbitrary and capricious standard is more lenient and deferential to the agency than the substantial evidence standard because it requires only that there be a rational basis for the agency's decision.

*Northfork,* 2010 WY 41, ¶ 17, 228 P.3d at 845 (quoting *Dale,* 2008 WY 84, ¶ 12, 188 P.3d at 559) (internal citations and quotation marks omitted).

[¶ 28] The Wilsons' contentions that the decision of the State Engineer was arbitrary and capricious—that it was not reasonable given the facts and that it had no rational basis—can be condensed into the following points: (1) the statute requires a headgate where the water is being diverted; (2) the diversion dam sends five to six times Lucerne's adjudicated amount down the eastern channel; (3) no headgate at the diversion dam means no control over that flow; (4) the excess flow damages the Wilsons' property; and (5) during the 1990s, the division superintendent and the State Engineer required Lucerne to install a headgate or other check structure at the diversion dam, but then abandoned that demand.

[¶ 29] The State Engineer responds to the Wilsons' allegations first by reminding the Court that the petitioner bears the burden of showing by clear and convincing evidence that an agency action was arbitrary and capricious. *Newman,* 2002 WY 91, ¶ 15, 49 P.3d at 169. Next, the State Engineer identifies two fundamental facts supporting its decision: this Court held in *Wilson II* that Lucerne was entitled to continue its historic use of its irrigation facilities, and Lucerne operates an adequate headgate at its historically permitted location.

[¶ 30] We have carefully reviewed the entire record in these related cases and we conclude that the State Engineer's decision was not arbitrary or capricious. In addition to the points just mentioned, the record reflects that additional flow down the eastern channel is necessary for the proper operation of Lucerne's downstream headgate, that the overflow is returned to the river without harm to other appropriators, and that, statewide, the State Engineer does not treat diversion dams as the point of diversion in situations such as this.

[¶ 31] In *Dale,* 2008 WY 84, ¶ 24, 188 P.3d at 561, we explained that "the words 'arbitrary' and 'capricious' must be understood in context as terms of art under the administrative review statute...." Under our precedent, that has come to mean that the agency acted reasonably based upon the evidence before it, and that there was a rational basis for the agency's decision. The standard legal definition of "arbitrary and capricious" is "founded on prejudice or preference rather than on reason or fact." *Black's Law Dictionary* 119 (9th ed. 2009). In the instant case, the State Engineer considered the facts "on the ground," considered this Court's binding determinations in regard to the controversy, considered Lucerne's legally permitted water right, and treated this diversion dam just as it would treat any other. That is not arbitrary and capricious conduct.

### Did the district court fail to follow the mandate of the Supreme Court upon remand?

[¶ 32] In *Wilson II,* 2007 WY 10, ¶ 35, 150 P.3d at 667, we reversed in part and remanded the case to the district court for the following stated purpose:

As to the issue of quiet title, however, we reverse and remand this matter to the district court for entry of an order quieting title to the property in the Wilsons, subject to the right of Lucerne to transport water from its diversion dam to its headgate, and beyond, as set forth above. If the precise location of such easement cannot be stipulated, the district court shall take additional evidence to identify the precise location thereof, including the survey originally ordered by the district court in its January 10, 1989 order.

 [¶ 33] "We have held that substantial compliance is the standard for testing the disposition of a case made by the trial court after a remand order." *Smith Keller & Assocs. v. Dorr*, 4 P.3d 872, 875 (Wyo. 2000). Where, as here, the remand involves a bench trial, we apply our usual standard of review of the findings and conclusions of a judge, as opposed to a jury:

> After a bench trial, we review the trial court's factual findings under a clearly erroneous standard and its legal conclusions *de novo*. We do not substitute ourselves for the trial court as a finder of facts; instead, we defer to the trial court's findings unless they are unsupported by the record or erroneous as a matter of law. Although the factual findings of a trial court are not entitled to the limited review afforded a jury verdict, the findings are presumptively correct.

> This Court may examine all of the properly admissible evidence in the record, but we do not reweigh the evidence. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses. We accept the prevailing party's evidence as true and give to that evidence every favorable inference which may fairly and reasonably be drawn from it. Findings may not be set aside because we would have reached a different result. A finding will only be set aside if, although there is evidence to support it, this Court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

*Ultra Res., Inc. v. Hartman*, 2010 WY 36, ¶ 97, 226 P.3d 889, 922–23 (Wyo.2010) (citations omitted).

[¶ 34] We will give short shrift to this argument. We remanded to the district court in *Wilson II* for entry of a quiet title order in favor of the Wilsons, subject to Lucerne's water facilities easement. *Wilson II*, 2007 WY 10, ¶ 35, 150 P.3d at 667. If the parties could not agree upon the easement's location, the district court was to hold a hearing on the matter. That hearing was held and the district court issued its Order on Location of Easement on November 24, 2009. The order was appealed before the dust had settled in the resultant battle over the form of the final judgment—a final judgment we presume would have included the order quieting title to the underlying land in the Wilsons.

[¶ 35] The district court substantially complied with this Court's mandate upon remand in *Wilson II*. Logically, the quiet title order could not be entered until the easement to which title was subject was identified. That has now been done, so we will again remand the case to the district court for the purpose of entry of such order. We presume, perhaps at our peril, that the legal description of the land to which title has been quieted was adequately described in the proceedings that led to *Wilson II*. If not, that process should also be completed.

### Are the district court's findings of fact clearly erroneous?

 [¶ 36] Earlier herein, we noted that the factual findings of a district court after a bench trial are presumptively correct and that we do not set them aside unless they are clearly erroneous. *Ultra Res.*, 2010 WY 36, ¶ 97, 226 P.3d at 922–23. Before we can apply that review standard to the present issue, we must set out some factors that will limit our discussion.

[¶ 37] First, as we recognized in *Wilson II* and the district court recognized upon remand, the Wilsons are precluded by the doctrines of *res judicata* and judicial estoppel from contesting Lucerne's historically defined use of the eastern channel as part of Lucerne's irrigation facilities. *Wilson II*,

2007 WY 10, ¶¶ 24, 28, 150 P.3d at 662–63, 664. In *Wilson II,* all that was remanded was the need for the district court to identify and locate that use as an easement. Therefore, the only findings of fact the Wilsons can be challenging herein are the findings of fact related to that identification and location.[4]

[¶ 38] The second limiting factor in this analysis is the structure of the Wilsons' appellate brief. The brief sets out numerous separately listed issues, including the "clearly erroneous" issue, but the argument section of the brief is not arranged issue-by-issue, and nowhere does it list the specific findings of fact alleged to be clearly erroneous. This leaves the Court with the task of speculating, based upon the arguments made, what findings of fact the Wilsons believe are clearly erroneous.[5]

[¶ 39] With those caveats, our review of the Wilsons' appellate brief, the district court's order, and the entire record, leads us to conclude that the Wilsons find the following findings of fact to be clearly erroneous:

. . . .

9. Lucerne historically has used the eastern channel, *wherever that channel is,* to get water from its upper diversion to its final diversion.

10. [The] [e]astern channel has a definable bank on the east and north side, but generally does not have a definable bank on the south and west side. In many places the slope from the eastern channel to the south and west is very gradual.

11. The eastern channel is highly irregular in size and shape. Although the Supreme Court stated that is has been used as [a] canal, its physical characteristics are nothing like a canal. It is a naturally occurring river channel, without a significant bank or boundary in many place[s] on its south and west side.

12. Some free-board is necessary and appropriate to accommodate Lucerne's his-toric use of the eastern channel. In times of high river flows that free-board area has been used (i.e.: 1982–83 flows).

13. It is not reasonably possible to identify a line or high point on the south and west side of the eastern channel beyond which water has not flowed or would not be expected to flow as a result of Lucerne's full use of the eastern channel.

. . . .

18. The location of any easement down the eastern channel is adequately described by referring to the eastern channel of the North Platte River. All witnesses were able to determine and discuss where the eastern channel is.[ ]

19. If a surveyed description of the area utilized by Lucerne is required, the description provided by Lucerne in Exhibit 2(a) adequately describes the area utilized by Lucerne, including a 3 foot free-board. That free-board may not be intentionally used by Lucerne to convey its water, but is a buffer for use during unforeseen high flows. The area Lucerne may intentionally use is limited to the location of the eastern channel without the 3 foot free-board.

(Emphasis added.)

[¶ 40] We will not analyze these findings individually because it is more instructive to view them collectively, in the context of the parties' positions—positions which the trial transcript reveals were the focus of the battle below. Lucerne contends that its historic use of the eastern channel, in whatever amount and wherever flowing at any given time, defines the extent of its easement. The Wilsons contend, to the contrary, that the easement should be limited to the much smaller area where water usually flows in the channel. That is the substance of this conflict—Lucerne wants the area of its use to remain unlimited, while the Wilsons want to limit that area.

---

4. The parties have not raised the law of the case doctrine, which also may be applicable. *See Lieberman v. Mossbrook,* 2009 WY 65, ¶ 28, 208 P.3d 1296, 1305 (Wyo.2009) (court's decision on an issue of law at one stage of proceeding is binding in successive stages of that and related cases).

5. This problem is exacerbated by the fact that the district court's findings of fact and conclusions of law are not separately stated.

[¶ 41] When seen in this light, it is clear that the Wilsons are trying to do what they are estopped from doing; that is, they are asking the court to change Lucerne's historic use of the eastern channel from the unfettered flow of a natural watercourse, to the controlled flow of a canal. The district court recognized this fact and made findings of fact, based upon the record evidence, that supported the "law of the case." All of the contested findings of fact are supported by the testimony of the surveyor and the former State Engineer, including the meandering nature of the eastern channel and the poorly defined western "bank." The easement survey introduced by Lucerne was the only easement survey admitted into evidence, and witness testimony established its accuracy in identifying historic use.

[¶ 42] One issue—that of "freeboard"—perhaps deserves special comment. The surveyor added a three-foot vertical "air space" above the high water line of the easement because this Court had said in *Wilson II* that the channel was being used as a canal, and canal design parameters include a freeboard area above the expected high water flow to account for unforeseen high water events. Further, the surveyor believed the freeboard area would protect Lucerne from liability in the event of such an unforeseen event. The surveyor's testimony in regard to freeboard is instructive:

> Q And as you heard me say in my opening, it's basically air space, is it not? Above the high waterline, 3 foot, there is nothing there, is there, sir?

> A It is an operating area. It is a recommended operating area. It is a safety valve in canal facilities. All of them have it in the irrigation districts, Fort Laramie Canal. You cannot build a canal to transport irrigation water and not have some sort of safety valve, some sort of area. Yes, typically, that area would be air when everything is operating correctly, properly, normally, whatever you want to call it, yes; but when we have a maximum event of some sort where water may be introduced into the system or there is a failure in part of the system to disallow us from totally controlling the amount of water entering the channel, then you have a safety valve there to protect the adjoining area.

> . . . .

> A Freeboard is a design consideration in canals. It provides a number of safety factors and protections for the irrigation district in their operation of their facilities. It allows them to not have a perfect system, not to have total control over that system, be able to make some mistakes in how much water they let into the channel, also provides for space for incoming storm flows or some other type of flow so that it will not overflow the channel and do damage to their system or adjoining system.

[¶ 43] What is most significant in respect to the freeboard area contained in the easement survey admitted into evidence, and included in the district court's order as an area that could not intentionally be used by Lucerne, but which existed only for unforeseen events, is that such comes as close as possible to duplicating the historic use of the eastern channel by Lucerne as a naturally flowing channel, as opposed to a designed canal. Lucerne never has had, and never will have, control over upstream events on the North Platte River. The freeboard concept adopted by the district court simply recognizes that fact and incorporates it into the resolution of this dispute. The district court's finding that the freeboard area was part of the historic use was not clearly erroneous.

### *Did the district court abuse its discretion by excluding the testimony of the Wilsons' proposed expert witness?*

[¶ 44] On June 19, 2009, the Wilsons responded to a discovery request from Lucerne by indicating that "[n]o experts have been hired." On August 25, 2009, the Wilsons supplemented their response with the following information:

> Wilsons may utilize the testimony of the following expert witnesses:
>
> . . . .
>
> B. Mr. Cotton Jones
> Jones Land Surveying, Inc.
> 6750 Say Kally Road
> Cheyenne, Wyoming 82009

(307) 637–7107

Mr. Jones may be employed to survey the channel now utilized as an irrigation canal. If he makes a survey he will testify as to the location of the channel and the means he utilized to determine the location. If a survey is not made, Mr. Jones will give his opinion as to the ease with which the channel now utilized as an irrigation canal can be surveyed and the engineering techniques which can be utilized for making such a survey.

[¶ 45] Lucerne's attorney immediately contacted the Wilsons' attorney to inquire about this proposed expert witness, and wrote the following in a letter to the Wilsons' attorney on August 26, 2009:

I understand from speaking with you today that Mr. Jones has not been retained by you and that you have, in fact, never spoken with him. You further confirmed that Mr. Jones has not completed any survey and, to your knowledge, has never visited the Wilsons' property in relation to the issues involved in the current dispute over the survey, location, boundaries or scope of Lucerne's easement. I understand that Mr. Jones has not provided you with a cost estimate regarding completing a survey or any other work. You indicated that there would be no reason for me to depose Mr. Jones as he would have no information about the survey or the easement in question.

[¶ 46] Despite the above correspondence, the Wilsons' pre-trial disclosure listed Cotton Jones as a "may call" witness, and identified the following as a possible exhibit: "If prepared, a survey and description of the channel which Lucerne utilizes for transporting water from where it is diverted from the North Platte River to its headgate." Lucerne responded with a motion *in limine* asking the district court to preclude Jones from acting as an expert witness and from providing any opinion testimony at trial. In the memorandum of law filed in support of its motion, Lucerne noted the discovery matters set forth above, and then argued that the Wilsons had violated W.R.C.P. 26(a)(2), which requires in pertinent part as follows:

(2) Disclosure of expert testimony.

(A) In addition to the disclosures required by paragraph (1) or (1.1), a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Wyoming Rules of Evidence.

(B) Except as otherwise stipulated or directed by the court, this disclosure *shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case* or whose duties as an employee of the party regularly involve giving expert testimony, *be accompanied by a written report prepared and signed by the witness or disclosure signed by counsel for the party. The report or disclosure shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; and exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.*

(C) *These disclosures shall be made at the times and in the sequence directed by the court. In the absence of other directions from the court or stipulation by the parties, the disclosures shall be made at least 90 days before the trial date or the date the case is to be ready for trial or, if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under paragraph (2)(B), within 30 days after the disclosure made by the other party. The parties shall supplement these disclosures when required under subdivision (e)(1).*

(Emphasis added.)

[¶ 47] As noted above, the district court granted Lucerne's motion *in limine* during

an unreported bench conference. *See supra* ¶ 15. The post-trial Order on Location of Easement contained the following explanation of that ruling:

Wilsons attempted to offer evidence of a survey they obtained in late October, 2009, less than two weeks before trial. The Court excluded that evidence for failure to comply with WRCP 26. Wilsons submitted an offer of proof.

[¶ 48] In the memorandum of law submitted to the district court in support of its motion *in limine* and in its appellate brief, Lucerne identifies the Wilsons' deficiencies in this regard as the failure to provide any of the following:

1. a written report prepared and signed by Mr. Jones in which he provided a complete statement of all of the opinions that he would be expressing, and the basis and reasons for such opinions;

2. the data or other information considered by him in forming his opinions;

3. any exhibits to be used as a summary of or in support of his opinions;

4. his qualifications;

5. a list of the publications that he has authored within the preceding ten years;

6. the compensation to be paid for his studies or testimony; or

7. a listing of any other cases in which he has testified as an expert within the preceding four years.

[¶ 49] The Wilsons counter these arguments with several contentions. First, they argue that they appropriately disclosed Mr. Jones and his survey report in a supplemental discovery response on August 25, 2009, and again in their pre-trial disclosures on September 14, 2009. Next, they contend that Mr. Jones was not able to complete the survey until late October 2009, and that the record of his survey was provided to counsel for Lucerne as soon as it was available in November 2009. Finally, at the outset of the trial, the Wilsons' attorney informed the district court that Mr. Jones would be called as a rebuttal or impeachment witness, if at all. Based upon this last assertion, the Wilsons contend that W.R.C.P. 26(a)(3) creates an exception to disclosure for impeachment witnesses.

[¶ 50] The question of the admissibility of evidence is primarily a question for the trial court. W.R.E. 104(a). "We will reverse a trial court's decision on the admissibility of evidence only if the trial court abused its discretion." *Clark v. Gale*, 966 P.2d 431, 435 (Wyo.1998). "In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did." *Dean v. State*, 2008 WY 124, ¶ 14, 194 P.3d 299, 303 (Wyo.2008) (quoting *Campbell v. Studer*, 970 P.2d 389, 392 (Wyo.1998)). These rules apply to a district court's decision whether to admit or reject expert testimony. *Id.*

[¶ 51] We will first discuss the Wilsons' final contention—that is, that they were not required to disclose Cotton Jones as a witness because he was only a rebuttal or impeachment witness. The Wilsons are wrong in this regard, for a couple of reasons. First, the structure of W.R.C.P. 26(a) does not support their argument. W.R.C.P. 26(a) is concerned with required disclosures during the discovery process. Subsection (a)(1) governs initial disclosures, subsection (a)(2) governs disclosure of expert testimony, and subsection (a)(3) governs specific matters such as the disclosure of the names and addresses of all witnesses, the distinction between "will call" and "may call" witnesses, the designation of witnesses expected to testify by deposition, and identification of exhibits. The exception in (a)(3) for witnesses being called "solely for impeachment" simply does not negate the requirement in (a)(2) for appropriate disclosure of expert witnesses. Were this true, defendants could always avoid identification of their expert witnesses by claiming that the expert testimony was solely intended to impeach the plaintiff's expert. Beyond that, and the second reason the Wilsons argument is not valid, is the fact that the proffered testimony of Cotton Jones went well beyond impeachment and was, for all intents and purposes, simply the testimony of an expert witness.

[¶ 52] The disclosures required by W.R.C.P. 26(a)(2) are mandatory. *LM v.*

*Laramie County Dep't of Family Servs. (In re MN)*, 2007 WY 189, ¶ 5, 171 P.3d 1077, 1080 (Wyo.2007) (use of the word "shall" in a statute makes the provision mandatory). Thus, if the district court reasonably found that the Wilsons did not comply with those mandates, it certainly cannot be said that the district court abused its discretion in not admitting the expert testimony. Of particular importance in the instant case are the time limitations contained in W.R.C.P. 26(a)(2)(C), which, absent other direction by the district court, require disclosure as to expert testimony to be made at least 90 days before trial, and disclosure of rebuttal expert testimony to be made within 30 days after that disclosure.

[¶ 53] The sequence of significant post-remand pre-trial disclosure events was as follows in this case: On May 19, 2008, the Wilsons filed a Request for Entry of Order Quieting Title and Order Establishing Date for Completion of Survey. On July 7, 2008, the district court entered its Order on Motion, which ordered Lucerne to file an easement survey by July 31, 2008, gave the Wilsons 30 days thereafter to file any objections, and reserved the setting of an evidentiary hearing. Lucerne filed its easement survey on July 30, 2008, and the Wilsons filed their objections thereto on September 2, 2008. On May 5, 2009, the district court entered a Scheduling Order, requiring discovery to be completed by September 15, 2009, and setting the evidentiary hearing for November 9, 2009.

[¶ 54] As mentioned above, the Wilsons disclosed Cotton Jones as a "may call" witness in a supplemental discovery response on August 25, 2009, and listed him again in the same capacity in their pre-trial disclosure of September 14, 2009. These filings resulted in Lucerne's motion *in limine*, the granting of which led to the issue now before the Court. It bears repeating at this point that, in its final order, the district court noted that Mr. Jones had not conducted his easement survey until October 2009, less than two weeks before the trial, and that the Wilsons had not complied with W.R.C.P. 26 in regard to his testimony. The proffer of Mr. Jones' testimony made at the end of the evidentiary

hearing specifies October 28, 2009, as the date the survey occurred. There is no indication in the record that the survey report was provided to Lucerne prior to trial, or that the disclosures mandated by W.R.C.P. 26(a)(2) outlined above were ever made in the detail required by the rule.

[¶ 55] Under these circumstances, we cannot say that the district court abused its discretion in disallowing the testimony of the Wilsons' belatedly identified expert, Cotton Jones. The Wilsons have not presented compelling argument or citation to pertinent authority supporting their contention that Mr. Jones was merely an impeachment witness under W.R.C.P. 26(a)(3), rather than an expert witness under W.R.C.P. 26(a)(2). In addition, Lucerne filed its easement survey on July 30, 2008, the Wilsons filed their objection thereto on September 2, 2008, and the evidentiary hearing did not occur until November 9, 2009. The purpose of the remand was for the district court to determine the location of the eastern "channel" easement, and the record shows no justifiable excuse for the Wilsons' failure to file a survey report for more than a year after they clearly objected to the survey report presented to the district court by Lucerne.

### Was Lucerne's certificate of costs timely filed?

[¶ 56] U.R.D.C. 501(a)(1) provides in pertinent part that "[w]ithin 20 days after entry of the final judgment allowing costs to the prevailing party, a certificate of costs shall be filed and copy served upon opposing counsel." In the present case, the Order on Location of Easement was filed on November 24, 2009. That order did not indicate that it was a final judgment, and no mention was made of costs. On November 30, 2009, the Wilsons submitted a proposed judgment. On December 2, 2009, Lucerne filed an objection to the form of that proposed judgment. The matter was heard on December 17, 2009, at which time the district court indicated that the November 24, 2009, order would stand as the final judgment and granted Lucerne's request to submit a certificate of costs. Lucerne's certificate of costs was filed on January 5, 2010.

[¶ 57] The Wilsons contend that Lucerne should have filed its certificate of costs within twenty days of entry of the November 24, 2009, order. They cite *Platt v. Creighton*, 2007 WY 18, ¶ 9, 150 P.3d 1194, 1199 (Wyo. 2007) for the proposition that time limits established by court rule are mandatory. While this legal proposition may be true, we find that the November 24, 2009, order, at the time it was entered, was not the "final judgment allowing costs to the prevailing party" contemplated by U.R.D.C. 501(a)(1). It was not until December 17, 2009, after considering the parties' proposed judgments, that the district court announced the November 24, 2009, order as the final judgment and directed Lucerne to file its certificate of costs. Such filing occurred within twenty days, making it timely.

### Did the district court abuse its discretion in awarding costs to Lucerne?

[¶ 58] W.R.C.P. 54(d)(1) provides that, in the absence of a statutory or rule-based exception, "costs other than attorney's fees shall be allowed as of course to the prevailing party unless the court otherwise directs[.]" In turn, U.R.D.C. 501(a)(3) defines allowable costs in civil case. We review a district court's decision regarding the award of costs for abuse of discretion. *Meyer v. Hatto*, 2008 WY 153, ¶ 25, 198 P.3d 552, 557 (Wyo.2008). To prevail, the party contesting the district court's ruling must show that the court "act[ed] in a manner which exceeds the bounds of reason under the circumstances." *Id.*

[¶ 59] The Wilsons' first disagreement with the district court's award of costs is the court's alleged failure to consider their objections thereto. Lucerne filed its certificate of costs on January 5, 2010. The Wilsons filed a response on January 18, 2010, objecting to the award of costs. U.R.D.C. 501(a)(2) requires the court to consider, with or without a hearing, any objections that have been filed. The order approving Lucerne's certificate of costs was filed on April 27, 2010, but it was signed by the district judge on January 6, 2010, the day after the certificate of costs was filed. The date of signing leads the Wilsons to conclude that the district court did not consider their objections, as mandated by U.R.D.C. 501(a)(2).

[¶ 60] Without more shown in the record, we cannot conclude that the district court ignored its duty to consider the Wilsons' objections to an award of costs. To the contrary, the fact that the order was not filed until well after both the certificate and the objections were filed indicates that, if the district court inadvertently signed an order that was presented with the certificate, the order was withheld until the court had time to review both documents. The fact that a hearing was not held is neutral because no hearing is required by the rule.

[¶ 61] U.R.D.C. 501(a)(3)(B)(ii) allows the taxation of costs for expert witnesses "at the rate of $25.00 per day or such other amount as the court may allow according to the circumstances of the case." In their response filed in the district court, the Wilsons objected to the award of expert witness costs to Lucerne's surveyor at the rate of $80.00 per hour, and to the former State Engineer at the rate of $195.00 per hour. In their appellate brief, the Wilsons complain only about the latter. The gist of the Wilsons' complaint is that the State Engineer was a "token expert witness" and that "[h]is testimony falls far short of being of the nature for which any expert witness fees should be awarded." To be blunt, we find no substance to these complaints. Rather than attack the hourly rates as being unreasonable, the Wilsons have chosen to attack the "value" of the testimony to the final outcome. We have reviewed the trial transcript and it is clear that Lucerne's position was presented largely through the testimony of these two witnesses. Furthermore, their testimony, and their areas of expertise, focused directly on the points at issue during the trial. The Wilsons have not shown that the district court abused its discretion in awarding these costs.

[¶ 62] Next, the Wilsons challenge the award of $497.00 as costs for the taking of Mr. Wilson's deposition. The governing rule as to deposition costs is U.R.D.C. 501(a)(3)(D), which reads as follows:

(D) Costs of depositions.

(i) Costs of depositions are taxable if reasonably necessary for the preparation of the case for trial. A deposition is deemed reasonably necessary if:

I. Read to the jury as provided in Rule 32(a)(3), W.R.C.P.;

II. Used at trial for impeachment concerning a material line of testimony (impeachment on a collateral issue does not fall within the scope of this rule);

III. Necessarily, and not merely conveniently, used to refresh the recollection of a witness while on the stand; or

IV. Was taken at the request of a nonprevailing party.

The foregoing are meant to provide guidelines, and are not exhaustive. The use of depositions for trial preparation alone does not justify the imposition of costs.

[¶ 63] It is, perhaps, interesting that, under U.R.D.C. 501(a)(3)(D), the deposition of a party opponent is not automatically considered reasonably necessary for the preparation of the case. Consequently, as with any deposition, "the burden must be upon the party seeking the award of costs to justify to the district court that those costs were reasonably necessary for the preparation of the case for trial." *Cundy Asphalt Paving Constr. v. Angelo Materials Co.*, 915 P.2d 1181, 1183 (Wyo.1996) (quoting *Weaver v. Mitchell*, 715 P.2d 1361, 1373 (Wyo.1986)). In the instant case, the record does not reflect any justification for an award of costs for this deposition beyond the bald assertion in the certificate of costs that the deposition was used at trial and the costs were actually and necessarily incurred. Given this dearth of justification, we would be hard-pressed to find that the district court acted reasonably in awarding these costs. *See Garrison v. CC Builders, Inc.*, 2008 WY 34, ¶ 49, 179 P.3d 867, 879–80 (Wyo.2008).

[¶ 64] In its appellate brief, Lucerne attempts to justify the award of costs for Mr. Wilson's deposition because the deposition was used at trial to impeach Mr. Wilson on the following question and answer from the deposition:

Q. Mr. Wilson, are you trying to require Lucerne to take legal and physical responsibility for the North Platte River as it flows through this area?

A. Yes.

Lucerne finds significance in this exchange because the district court, in its Order on Location of Easement, made the following finding of fact:

14. Thomas Wilson testified that his goal for a survey is to contain and restrict the area Lucerne can use to transport its water. The evidence showed that such a restriction would be contrary to Lucerne's historic use.

[¶ 65] We find none of this persuasive in regard to the award of costs for Mr. Wilson's deposition. The question in the deposition is simply argumentative, and the district court's finding does little more than encapsulate the central trial issue. In short, there is nothing in the record supporting an award of costs to Lucerne for Mr. Wilson's deposition. That portion of the award will be reversed.

[¶ 66] Finally, the Wilsons object to the award of costs to Lucerne in the amount of $67.43 for "duplication and preparation costs and expenses for documents and exhibits admitted into evidence." The controlling law is found in U.R.D.C. 501(a)(3)(E), which includes in allowable costs "[d]uplicating costs necessarily incurred for documents admitted into evidence. . . ." While we are troubled somewhat by the lack of specificity as to this category of costs, by the fact that "duplication and preparation costs and expenses" may or may not equal "duplicating costs," and by the fact that Lucerne apparently provided no further information to the district court upon which it could exercise its discretion, the certificate of costs was verified, and we have held that a "verified bill of costs is *prima facie* evidence that the items listed were necessarily expended and are properly taxable as costs." *Garrison*, 2008 WY 34, ¶ 45, 179 P.3d at 879. Lucerne asserts in its appellate brief that these costs "represent one copy of the exhibits introduced." Even that information supplied to the district court would have been helpful. In the end, however, we conclude that the

district court did not abuse its discretion in awarding duplication costs.

## CONCLUSION

[¶ 67] The decision of the State Engineer that Lucerne's headgate located at its adjudicated point of diversion satisfies the requirements of Wyo. Stat. Ann. § 41–3–613 was not contrary to law, and the State Engineer's decision not to require Lucerne to install a headgate at its diversion dam was not arbitrary and capricious. The process and decisions of the district court were consistent with this Court's mandate upon remand, and its findings of fact following the bench trial were not clearly erroneous. The district court's exclusion of the testimony of Wilsons' belatedly identified expert witness did not evince an abuse of discretion, particularly because the required disclosures in regard to that witness were not made. Finally, the district court did not abuse its discretion in its award of costs to Lucerne, except for the award of $497.00 in deposition costs, which were not adequately substantiated under the applicable court rule.

[¶ 68] Affirmed in part, and reversed and remanded to the district court for entry of an order consistent herewith.